## Miller *versus* Wilson.

1. A judgment-creditor agreed, in lieu of her judgments, to accept the bond of another conditioned to provide for and maintain her during life or pay her, if she preferred it, $150 per annum; the bond to be secured by a mortgage of land of the obligor. A person employed to prepare the instruments and to have the mortgage entered of record withheld it from record till the property became otherwise encumbered by claims, in one of which he was interested as a joint defendant, to an amount beyond its value; and the debtor became insolvent.

In an action on the case by the party injured, it was *Held* that she could recover from the agent all that she had lost or was likely to lose by his default —all that the mortgage, if duly recorded, would have been worth to her.

2. The right of action accrued when the engagement to put the mortgage on record was violated, and the plaintiff was not bound to delay suit against the party agreeing to put the mortgage on record, till the obligor in the bond had made default in making the annual payment.

3. It was not necessary for the plaintiff to prove that she had paid or expressly promised to pay the defendant for the service to be performed—the law implied a promise on her part to pay a proper compensation.

4. On the death of the defendant after the institution of the suit and before trial, the action did not *abate*, but survived against his personal representative, as provided by the 28th section of the Act of 24th February, 1834.

5. A Court may adjourn at any stage of progress in the trial of a cause.

6. After a jury was called into the box at a regular term and before it was sworn, the Court adjourned till an adjourned Court, the other jurors being dismissed. The jurors selected met at the time appointed and were sworn, the defendant refusing to challenge because the panel might be filled from bystanders.

*Held* that the refusal to challenge was a waiver of the right, whether his reason for refusing was good or bad.

ERROR to the Common Pleas of *Washington county.*

This was an action of trespass on the case, to August Term, 1849, by Margery Wilson *v.* Thomas Miller, to recover damages

[Miller v. Wilson.]

for his failure to have entered of record a mortgage in her favor, executed by Adam Carson. The defendant dying after suit brought, the administrator of his estate was substituted.

In 1838, the executor of the will of Charles Wilson sold to Rachel Worrell and Rebecca Wilson, daughters of the testator, a tract of land in Washington county, containing about 240 acres. Margery Wilson, the plaintiff, was also a daughter of Charles Wilson, and was entitled to a share in the proceeds of sale. Judgment-bonds were executed in her favor by her sisters, for about $1500, upon which three judgments were entered *on the 7th December*, 1838.

Subsequently Adam Carson married Rebecca Wilson, and thus acquired an estate by the curtesy in the undivided half of the said land; and he purchased the interest of Mrs. Worrell, and on the 14th March, 1844, executed three judgment-bonds in her favor, upon which judgments were entered, amounting in all to above $1600; and he thus became the owner in fee of the other undivided half of the land. The lien of these judgments was continued by *scire facias*. On those of Margery Wilson no *sci. fa.* had been issued.

Mrs. Worrell desired to procure a discharge of her personal responsibility to Margery Wilson, and Thomas Miller was applied to, to arrange the transaction. An agreement was made by which satisfaction was to be entered on the judgments of Margery Wilson, and Adam Carson was to support her, or else pay her $150 yearly during her life; and his bond to that effect was to be secured by mortgage of the land.

A power of attorney was executed to Miller, to enter satisfaction of the judgments in favor of Margery Wilson; and a bond in her favor in the penalty of $3000, and a mortgage for its security, were executed by Adam Carson—all being dated on 7th August, 1844. On 6th November, 1844, Miller, as attorney in fact of Margery Wilson, entered satisfaction on the judgment in her favor. The mortgage was not acknowledged till the 3d December, 1844; and was not recorded till the 25th August, 1848.

In the mean time, viz., on 9th October, 1846, judgments were entered in favor of The Franklin Bank of Washington, against Adam Carson and others, for above $24,000. In one of them Thomas Miller was one of the defendants, being stated to be an endorser; judgment being for $5000.

On 28th February, 1848, the land embraced in the mortgage to Margery Wilson was levied on under one of the bank judgments. Inquisition was waived by Adam Carson on the undivided half, not to affect the interest in right of his wife; and, on the 3d December, 1848, the interest in the said land, which he had purchased from Rachel Worrell, was sold at sheriff's sale for $2410. The life estate of Carson in the other half of the land remained

unsold. The judgments in favor of Mrs. Worrell were paid out of the proceeds of sale, and the residue, about $412, was applied to the judgments of the bank.

On the trial, it was contended, on the part of the plaintiff, that when the mortgage was executed, it was left with Thomas Miller, to have it recorded; and that he promised to have it recorded. This was denied on his part; and evidence was given with a view of showing that Miller was directed by Adam Carson, acting for Margery Wilson, to retain it in his possession till he was directed to have it recorded.

The mortgage was not recorded, as before stated, till the 25th August, 1848.

It was alleged in the *narr.* that the said Margery Wilson, in consideration that Carson would bind himself as aforesaid, agreed to enter satisfaction on her said judgments; and that Thomas Miller, defendant, in consideration of his being employed by her to prepare the instruments proper for the purpose, agreed to do what was necessary to secure her by lien on the land of Carson; that she executed to him a power of attorney to satisfy the judgments, which he accordingly had satisfied, but that, though she delivered to him the mortgage for record, he neglected and refused to leave it for record until after judgments had been entered against Carson, by which the plaintiff was subjected to loss and damage.

On the trial of this case, it was testified by a witness, under objection, that the curtesy estate of Adam Carson, when the judgments of the Bank were entered, was worth $1200; and that Adam Carson, at the time of the trial, was insolvent.

The case was tried at an adjourned Court, commencing on 20th June, 1854. It appeared to have been first called up at the preceding regular term of the Court, how long before held did not appear in the paper-books. Before the jury was sworn, the counsel for *defendant* refused to challenge on the ground that, after the Court had decided to continue the case until this day, twelve jurors, regularly returned, were called, but not challenged or sworn, and that the remaining jurors were dismissed, and the twelve also dismissed, with directions to attend on this day, and were present. The said counsel refused to challenge, on the ground that the defendant had the right to have his challenges, when made, supplied by jurors returned on the *venire*, and not from those standing around. It was further stated that when, *at the regular sitting of the Court*, it was proposed to continue the case till the present time, it was resisted by defendant's counsel; and that, to obviate an objection made, it was mentioned that challenges could be supplied *de circumstantibus*. To this the defendant's counsel neither objected nor assented. It was added,

[Miller *v.* Wilson.]

"defendant's counsel refuse to challenge for this cause.". The objection was overruled, and exception was taken.

It was also moved that the suit be dismissed, on the ground that it had *abated* by the death of the defendant. This was refused.

In the 28th section of the Act of 24th February, 1834, it is enacted: "Executors and administrators shall have power to commence and prosecute all personal actions which the decedent whom they represent might have commenced and prosecuted, except actions for slander, for libels, and for wrongs done to the person; and they shall be liable to be sued in any action, except as aforesaid, which might have been maintained against such decedent if he had lived."

Points were submitted on part of defendant, 1. That the judgments of Margery Wilson against Rachel Worrell and Rebecca Wilson having lost their lien, the plaintiff cannot recover more than the balance of the proceeds of sale of Carson's land after satisfying the judgments of Rachel Worrell *v.* Adam Carson; 2. That to entitle the plaintiff to recover, Adam Carson must have failed to have performed the condition of his bond, and that then she could recover only to the extent of such breach; 3. That the *life estate* of Carson not having been sold, its value was not to be considered in estimating the damages; 4. That the defendant must have been bound by a contract entered into *for a valuable consideration to be paid by the plaintiff* to have the mortgage recorded; 5. That the penalty of the bond of Corson could not be recovered, but only damages for the breach of the condition; 6. That there can be no recovery for prospective damages; 7. That if the testimony as to directions on the subject of recording the mortgage be evenly balanced, the jury must determine the conduct of the defendant to be honest.

GILMORE, J., instructed the jury, "that although *Carson* had so far complied with the condition of his bond, yet in this case the undertaking was to create a security which was to last during the lifetime of the plaintiff, and that it was for this she agreed to part with her property; and he expressed the opinion that if an obligation existed on Miller to enter the mortgage, and he failed to have it entered, the plaintiff was entitled to recover damages to the value of the security lost; and that the jury should consider the sum to be secured as some data in estimating the damages; that the amount paid to the bank judgments, over $400, and the value of the life estate, estimated at $1200 or $1300, appeared to be the amount which would have been secured by the mortgage if it had been entered of record before the bank judgments had been entered."

He further charged "that it was not necessary that the plaintiff should have agreed to give Miller a stipulated price for his services; but that if he agreed to act for her, the law would imply

[Miller *v.* Wilson.]

a promise on her part to pay what his services were reasonably worth." He added, "But if the evidence of Carson is believed, she did pay him for his services."

The 1st point submitted was negatived, and the general charge was referred to as an answer to the points from 2 to 6; and as to the 7th, it was said that the cause of action should be made out by clear and satisfactory evidence.

Verdict was rendered for $1672.

Error was assigned to the refusal to dismiss the suit on the ground of abatement; 2. In continuing the case *to an adjourned term*, and requiring the defendant to supply his challenges *de circumstantibus*. The 3d, 4th, 5th, 6th, 7th and 8th assignments were to the refusal to answer the points from the 1st to the 6th, inclusive, as submitted, and in answering them as was done.

*Marsh, Gow,* and *Murdoch,* were for plaintiff in error.—That the action *abated,* reference was made to 6 *Wheaton* 260; 13 *Ser. & R.* 184–5. 2. The action was either in *tort* or in contract. If in *tort,* it abated. If in contract, only compensatory damages could be recovered; and as the Worrell judgments took all the money but about $400, the balance was all that was recoverable. 4. The surrender of the plaintiff's judgments was not the consideration of the mortgage; but the conditions of Carson's bond were the consideration for the surrender of the judgments, and the mortgage was collateral and could only be resorted to on Carson's failure to perform. In actions of contract, nothing can be recovered but such damages as are the immediate and legal consequence of the breach of contract: 8 *East,* Vicars *v.* Wilcocks.

As to the 3d point submitted: If the mortgage had been recorded, when would the plaintiff have been in a position to sell *the life estate* under a proceeding upon the mortgage? and it was uncertain whether the tenant for life would live till such a sale were made. It was further alleged that *Carson,* and not the plaintiff, employed Miller; and that he could not have recovered from her for his attention to the matter.

*McKennan, Acheson,* and *Wilson,* were for defendant in error. —Whenever the common law gives a right or prohibits an injury, it also gives a remedy by action: *Blackstone's Com.*; 6 *Mass.* 254. The compensation should be equivalent to the injury: 4 *Dallas* 206. The *gravamen* of the action in this case was the breach of contract, and not the damages that have or may result therefrom. The plaintiff could have but *one action* in which she could recover all the damages she sustained by reason of the breach of contract, and the suit must have been brought within six months from the time her right of action accrued: 7 *Barr* 27, Derrickson *v.*

Cady; 2 *Bing.* 229, Richardson v. Mellish, 9 *Eng. C. L.* 391; 5 *Barn. & Cress.* 259, Howell v. Young. The plaintiff in this case was the owner of three judgments, which under the advice of Miller she released, and received the mortgage which was to have been entered so as to be a lien on Carson's real estate, which, it was said, *was ample* for its security. Afterwards Miller became an endorser for Carson, and when he was about to fail, Miller neglected to have the mortgage recorded. The Worrell judgments were the first liens. If the mortgage had been recorded, it would have been the next lien, and the bank judgments next in order; and a sale under them would have discharged the mortgage.

As to the life estate: The mortgage, if recorded, would have bound the life estate in the one-half of the land, as well as the fee in the other half. The fee has been sold, and the life estate is unavailable to the plaintiff by reason of the interposition of the bank judgments. The result to her is the same as if the life estate had been sold.

Though the consequences of the breach of contract have not been fully developed, still they may enter into the estimate of damages. Suppose Carson supports her for six years and then dies. There was no evidence that he had paid her anything since his insolvency; but if he were willing to labour for her, it was not for this that she released her patrimony. For all the consequences of the breach of contract, direct and ascertained, as well as probable, the defendant was answerable: 1 *Ld. Raym.* 339, Fetter v. Beal; *Id.* 692, case of recovery of £11 for a battery, and afterwards, part of the plaintiff's skull coming out, a second action was brought: *Held*, that the battery was the foundation of the action, and the damage which probably might ensue should have been given in evidence in the *first* action. Also cited *Chitty on Con.* 768; 18 *Jurist* 536, Rolin v. Stewart, case of dishonouring a check. The Court, in the present case, instructed the jury that they were not to allow any *interest* as damages, but that the plaintiff could recover only for the real loss or actual damage, and not for a merely probable or possible loss.

The continuance of the case was within the discretion of the Court, and it is not to be implied that any cause of challenge existed. The defendant was not required to supply from bystanders the jurors whom he might have challenged.

The opinion of the Court was delivered, December 18, by

BLACK, C. J.—Margery Wilson, the plaintiff below, had a claim against her two sisters, secured by judgments which were or had been a lien on lands owned by them. Adam Carson married one of the sisters, bought the other's share of the land, and agreed to become responsible to the plaintiff for her debt. She consented to accept in satisfaction thereof his bond to provide for and main-

[Miller *v.* Wilson.]

tain her during life, or to pay her, if she preferred it, one hundred and fifty dollars per annum; and to make the bond secure, she was to have a mortgage on the land. The defendant, Miller, was employed and paid to adjust the business agreeably to this arrangement; and the shape it took was assumed under his direction. He drew the papers, consisting of the bond, the mortgage, and a power of attorney to himself to enter satisfaction on the judgments. He took the power of attorney and executed it. He also took the mortgage, promising to have it recorded, and assuring the plaintiff that she would thus be made entirely safe. He did not record it, but withheld it until the property was encumbered with other liens (in some of which he himself had an interest) to an amount greater than its value. Carson became hopelessly insolvent, and, excepting his worthless bond, the plaintiff has no security for her claim. The defendant's counsel think that he ought not to pay for the great injury which his neglect has occasioned. The Court of Common Pleas and the jury thought otherwise, and we are of the same mind.

The argument is, that the plaintiff has not as yet suffered any actual loss from the defendant's violation of duty; and that she can recover from Miller only in case Carson makes default; because, the mortgage being but a security for the bond, there is nothing due on the former until the condition of the latter is broken. But we hold it for clear law, that Miller did not merely substitute his personal responsibility in place of the mortgage; that he did not become Carson's surety in the bond; but that he subjected himself to an immediate action, in which the plaintiff may recover compensation for all she has lost, and all she is likely to lose, through his misconduct.

On a contract to pay money at stipulated periods, there may be as many suits as there are instalments; for every failure to pay is a fresh breach of the contract; and there can be no recovery except for what is due at the time of suit brought. But on a *tort,* or on a duty or promise, which has already been violated as grossly as it ever can be, there is but one action, and in that the injured party must have full justice. When, in the language of Chief Justice BEST, (2 *Bingham* 229,) the thing has but one neck, and that is cut off by one act of the defendant, it would be mischievous to drive the plaintiff to a second, third, or fourth action, as the successive consequences of the wrong may arise. It is not true, even as a general rule, that courts will not anticipate a loss *in futuro.* If a man destroys my orchard, I may demand full reparation at once; and I am not compelled to sue every year for each crop of fruit I lose. In slander, the damages are swelled by all the sufferings which the want of a good name may occasion subsequently. In an action for battery, the plaintiff shall recover for all the injuries likely to result from the wounds inflicted

[Miller v. Wilson.]

by his adversary: (1 *Ld. Raym.* 339.) He who sues for the loss of an office or employment, is entitled to a verdict at once for the whole value of it, without waiting until the profits would have reached his pocket: (2 *Bing.* 229.) But we need not resort to analogies. A case directly in point is that of Howell v. Young, (5 *Barn. & Cress.* 259.) There an attorney was employed to ascertain whe-, ther certain mortgages were a sufficient security for a loan of 3000*l.*, and falsely informed his client that they were. It was held, that in an action against the attorney the client might recover for all the *probable* loss he was *likely* to sustain from the invalidity of the security. The right of action, in such a case, accrues at the time when the contract or duty of the defendant is violated, and if suit be not brought within six years afterwards, the statute of limitations is a flat bar, no matter when the consequential loss may have happened.

The defendant has deprived the plaintiff of what she relied on for a living; and this judgment is less than it ought to be, if it does not place her in as good a condition, present and prospective, as he would have left·her in by doing his duty. It is vain to say she has suffered no real loss. A debt, worth to her eighteen hundred dollars, has been converted into a thing of no value. The defendant found her in possession of what her frugal habits taught her to think sufficient; he left her "as poor as winter." If he had taken the same sum out of her pocket in money, she must, according to his reasoning, suffer the extremity of the consequences before she has a right of action; and therefore she can bring no suit until she starves. But human nature will not endure such logic. The law is made for practical uses. It listens to no metaphysical subtleties; and will not consent, on any terms, to call that right which every sound heart feels to be wrong. The value of wealth, beyond what is barely necessary for the present hour, consists in the consciousness of having it, and the comfortable security it affords the possessor against future want. A cautious providence for the time of need, which may come hereafter, is one of the attributes which distinguish the race of man from the lower animals. The fear of becoming destitute is a sentiment as universal as it is necessary to the well-being of the world. When that fear is grounded on the absence of any accumulation which may serve as a support, it is poverty—a real, substantial, and sore evil, from which every well constituted person who feels it will seek relief by the utmost exertion of mind and body. Here was a woman who consented to give up all she had in consideration that one hundred and fifty dollars per annum, for the term of her life, should be secured to her beyond the reach of accidents by a mortgage. That mortgage was everything in the world that lay between her and the poor-house. By withholding it from the record, the defendant left her to meet the adversities

[Miller *v.* Wilson.]

of life unarmed, naked, defenceless, and "steeped in poverty to the very lips." Her counsel would send her to Carson for support—to Carson, who has no means of keeping the wolf from his own door. Why did they not tell her that she might possibly be fed and clothed by public charity ?·.

She must be made whole now or never—in this action or in none. That can be done by allowing her to recover all that the security she lost was worth—what a prudent person in her circumstances would be willing to give it up for—the difference in value between her debt made absolutely safe by a mortgage, and the same debt with no security except the personal responsibility of an insolvent man. How much is that? The Court fairly and carefully put this question to the jury, and their verdict is the answer.

Some minor points remain to be noticed. The Court was asked to charge that the plaintiff could recover only in case Miller bound himself by a contract to record the mortgage for a valuable consideration to be paid by her. This was substantially answered in the affirmative; but the Court very properly added that proof was not necessary to show that she had actually paid or expressly promised to pay him; that his contract was binding, if he made one, because the law would imply a promise on her part to pay him what he deserved. Besides, the only witness in a condition to know the fact swore that she did pay him.

Miller died after the commencement of this action, and before trial. It was objected by his administrator that the suit did not survive. That objection, and all the old cases cited to support it, are answered at once by the Act of 24th February, 1834, § 28. This is not a suit for slander, libel, or wrong to the person, and may therefore be sustained against the personal representative as fully as it could be against the decedent, if he were living.

It seems that when the cause came on for trial, a jury of twelve was called into the box, and the cause was continued to another day (how distant does not appear), without swearing the jury. The other jurors were then discharged, and the twelve selected for this case were ordered to be in their seats at the time fixed for the trial. They came accordingly, and were sworn, neither party making any challenges. We can see nothing wrong in this. The jurors were summoned, selected, and drawn, according to law. We must take it for granted that there was good reason for the adjournment, because nothing is alleged to the contrary, and, at any rate, it was a matter purely discretionary. A court may adjourn at any stage in the progress of a cause, and when it meets again the business should begin at the place where it was left off. Such was the course of proceeding here. When the Court met with a jury in the box called on the previous day, challenges were the next thing in order, but none were made; and so the jury was sworn, and the trial went on. If any juror had been challenged

[Miller v. Wilson.]

off, and his place been illegally supplied, it would have been a mistrial.  I will not say whether or not the circumstances would have justified calling a bystander; for that question does not arise.  The Court below did not decide it, and had no occasion to do so.  The refusal of the defendant to challenge, though placed on the record, and coupled with his reasons, is a waiver of his challenge, and nothing more.  He said he would not challenge, because if he did, the panel would be filled from the bystanders. We are not required to say whether his reason was good or bad. He had a right not to challenge for a bad reason, or for none at all.  We are not reviewing the decisions of the party, but those of the Court.

<div style="text-align: right;">Judgment affirmed.</div>