Alexander Meas, Appellant, *v.* George Johnson.

*Libel—Libellous words per se—Province of court and jury.*

Where words are of dubious import, the plaintiff may aver their meaning by innuendo, and the truth of the innuendo is for the jury; but the quality of an alleged libel, as it stands upon the record, either simply, or as explained by averments or innuendoes, is purely a question of law for the court; and in civil cases, the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true.

One tradesman becoming provoked at another over an alleged dilatoriness or disregard of his contract obligations wrote him a letter, coarse in its language, and showing irritation throughout, in which he used this language: "You are a first class fraud, and of the first water." In an action for libel against the author of the letter it was averred in the statement that the words quoted meant that plaintiff, in conducting his busi-

ness, cheated and deceived his patrons for purposes of gain, and that defendant thereby brought plaintiff into public ridicule, hatred and contempt. The only question raised was whether the publication was libelous. No special damages were either averred or proved. *Held*, that the plaintiff was entitled to go to the jury on the question of general damages.

Argued Feb. 2, 1898. Appeal, No. 465, Jan. T., 1897, by plaintiff, from order of C. P. Lehigh Co., Sept. T., 1896, No. 96, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Reversed.

Trespass for libel. Before ALBRIGHT, P. J.

At the trial it appeared that the plaintiff and Mrs. Samuel Harbison were engaged at Bethlehem, Pa., at the time of the alleged libel, in the business of electroplating, and their business was known as the Bethlehem Electroplating Works. The defendant resided in Catasauqua, Pa. On September 17, 1895, Johnson wrote a letter to plaintiff Meas of which the following is a copy:

"CATASAUQUA, PA., September 17th, 1895.
"ALEX. MEAS, ESQ., Bethlehem, Pa.

"Dear Sir: I am in receipt of your favor stating that you have shipped me all the finished and unfinished bells, also note that you are sorry that you can't ship me the 575 knives. In reply would say, I herewith enclose you my cheque for $9.02 to balance our account in full for all work done as per my statement of the 11th, and would further state that I will just give you twenty-four (24) hours to either ship me the knives as directed in my letter of the 14th, or bring them here to my house, or I shall take legal steps to put you in a hole you ought to have been in a good while ago, and I want you to understand you are not playing with any school boy, you have turned out to be just what I took you for, and I will take care of you in good shape. I want you to understand that I know nothing of your partnership business, and the cheque I am herewith enclosing pays for everything received up to date, all the work you have done since you claim to have taken in a partner was accepted by you prior to any outside interference, and I have all the prove I need of this fact, and I herewith return all the bogus bills that have been mailed me, and I would here state that in the event of any work being returned owing to poor

workmanship in plating, I shall hold you responsible for. I note that you say you never consented to plate the bells for $\frac{3}{4}$c. each, I would say in reply, I have all the evidence necessary to convince any jury that you took them at the figure named, and all I want is to have a good chance to show you up. You are a first-class fraud, and of the first water. I would like you to state what you agreed to plate the knives (you think you are going to hold) for, you first agreed to plate them for one (1) cent each, and then came crying around like a dam'd baby, and I agreed to give two (2) cents each, and on top of this, after you made a botch of them, and they had to be done over again, I said I would allow you one (1) cent each more, and then only 420 were found fit to send away, and the party says he is going to return some of them, and to top the matter off, you claim you are going to hold them until I send you a cheque to cover what you claim an old balance, I am just waiting to see how long you will hold them, and I, would here give you a pointer, don't come within my reach . . . . you surrender . . . . little you will remember talking over the matter of your plating the lot of bells, termed sample bells, and we agreed that a fair price would be $\frac{1}{2}$c. for the smaller sizes and $1\frac{1}{2}$c. each for the largest size, and I herewith return your bill, in which you charge more than the actual price of most of them.

" The twenty-four (24) hours will expire on Wednesday the 18th, at 9.00 A. M.

" Yours most respectfully,

" GEO. JOHNSON."

The letter was inclosed in an envelope directed to Alex. Meas, Esq., Bethlehem, Pa., and was mailed in the Catasauqua, Pa., post office. It was carried by special delivery, and delivered at the place of business of plaintiff in Bethlehem, Pa., but plaintiff was not there at the time of the delivery. It was received by one Samuel Harbison, secretary and treasurer of said Bethlehem Electroplating Works, who opened and read it, and then put it back into the envelope and, upon plaintiff coming back, handed it to him.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*John D. Hoffman*, for appellant.—A malicious written publication tending to expose a person to contempt, ridicule, hatred or degradation of character is a libel: Barr v. Moore, 87 Pa. 385; Pittock v. O'Niell, 63 Pa. 253; Neeb v. Hope, 111 Pa. 145; Price v. Conway, 134 Pa. 340. To print of a person that he is a swindler is a libel and actionable: J'Ansor v. Stuart, 1 T. R. 758. It is actionable to charge one in writing with being a villain, liar, rogue, rascal, swindler or drunkard: Townshend on Slander & Libel, sec. 177. To say of a man in a newspaper that he is guilty of infamous falsehoods is clearly a libel: McCorkle v. Binns, 5 Binney, 340.

Odgers on Libel & Slander, *20, furnishes the following illustrations among others of written libelous words:

"An infernal villain," Bell v. Stone, 1 B. & P. 331; "An impostor," Cooke v. Hughes, R. & M. 112; Campbell v. Spottiswoode, 3 B. & S. 769; 32 L. J. Q. B. 185; 9 Jur. N. S. 1069; 11 W. R. 569; 8 L. T. 201; "A hypocrite," Thorley v. Lord Kerry, 4 Taunt. 355; "A rogue and rascal," Per Gould, J., in Villers v. Monsley, 2 Weils, 403; "A dishonest man," Per Curiam in Austin v. Culpepper, Skin. 124; 2 Show. 314; Beehler v. Steever, 2 Wh. 313: "You are a villain and a swindler and you conspired with others to cheat me."

Any publication injurious to the social character of another, and not shown to be true, or to have been justifiably made, is actionable as a false and malicious libel: Wood v. Boyle, 177 Pa. 620.

To publish verbally of a merchant that he is a villain, a rascal and a cheat is actionable: Townshend on Slander and Libel, sec. 192; Weierbach v. Trone, 2 W. & S. 408.

To speak of a clergyman as a drunkard is actionable. To say of a lawyer he is a knave is actionable: McMillan v. Birch, 1 Binney, 178.

To call an attorney a cheat is actionable: Rush v. Cavenaugh, 2 Pa. 187.

To impute corrupt or dishonorable action to an attorney in his professional conduct is actionable per se, though it fall short of bribery: Barr v. Moore, 87 Pa. 385; Townshend on Slander and Libel (ed. 1890), 248; Newell on Slander and Libel (ed. 1890), 184; Wildel v. McKee, 111 Pa. 335; Aspell v. Smith, 134 Pa. 59.

A letter is published as soon as posted, and in the place where it is posted, if it is ever opened anywhere by any third person:. 13 Am. & Eng. Ency. of Law, 373 (note 3); Conroy v. Times,. 139 Pa. 334; Stokes v. U. S., 157 U. S. 187; McCoombs v. Tuttle, 5 Black, 431.

It is no defense that the third person was not intended to · overhear the slander or to read the libel if in fact he has done so. An accidental or inadvertent publication is quite sufficient to make it actionable: Shepheard v. Whitaker, L. R. 10 C. P. 502; Seip v. Deshler, 170 Pa. 334; Neeb v. Hope, 111 Pa. 145;. Barr v. Moore, 87 Pa. 385.

In an action on the case for a libel it is the province of the jury and not of the court to construe words of dubious import: Hays v. Brierly, 4 Watts, 392; Price v. Conway, 134 Pa. 340; Pittock v. O'Niell, 63 Pa. 253; Neeb v. Hope, 111 Pa. 145;. Farley v. Ranck, 3 W. & S. 554.

Words not laid in declaration nor actionable may be given in· evidence to show malice: Elliott v. Boyles, 31 Pa. 65; Klumph v. Dunn, 66 Pa. 141; Lukehart v. Byerly, 53 Pa. 418.

*John Rupp*, with him *A. N. Ulrich*, for appellee.—A libel has. been defined by this Court to be "any malicious publication, written, printed or painted, which by words or signs tends to· expose a person to contempt, ridicule, hatred or degradation of˙ character:" Barr v. Moore, 87 Pa. 385; Pittock v. O'Niell, 63. Pa. 253; Neeb v. Hope, 111 Pa. 145; McCorkle v. Binns, 5 Binney, 340; Collins v. Dispatch Publishing Co., 152 Pa. 187; Barr v. Moore, 87 Pa. 385.

The quality of an alleged libel as it stands on the record either simply, or as explained by averments and innuendoes, is purely a question of law for the court: Pittock v. O'Niell, 63. Pa. 253; Collins v. Dispatch Publishing Co., 152 Pa. 187.

Where words are of a dubious import the plaintiff may aver · their meaning by innuendo, and the truth of the innuendo is for the jury: Pittock v. O'Niell, 63 Pa. 253; Hayes v. Press Co., 127 Pa. 642.

We desire in this connection to call the special attention of the Court to the case of Pittsburg, Allegheny & Manchester· Passenger Ry. v. McCurdy, 114 Pa. 554. In this case the· alleged libel was as follows: "H. B. McCurdy has been dis-·

charged for failing to ring up all fares collected. Discharged employees are not allowed to ride on employees' tickets. C. P. Sorg, Ass't. Supt." McCurdy, before his discharge had been a conductor on the cars of the company. In the innuendo in the plaintiff's declaration, it was alleged that the alleged libel charged the plaintiff with being guilty of embezzlement. In the court below there was a verdict and judgment for the plaintiff. This judgment was reversed by the Supreme Court on the ground that the words charged were not libelous.

Opinion by Mr. Justice Dean, March 7, 1898:

Plaintiff carried on the electroplating business at Bethlehem, Pennsylvania; defendant resided at Catasauqua; they had business transactions, wherein plaintiff, by alleged dilatoriness and disregard of contract obligations, seems to have provoked defendant; thereupon, the latter, on September 10, 1895, in a letter showing irritation in every line, applied to plaintiff this epithet: " You are a first class fraud, and of the first water." Plaintiff, alleging the letter was libelous, brought suit for damages, filing statement under the procedure act of 1887. At the trial in the court below, defendant admitted the writing and publication of the letter. The only question raised was, whether it was libelous, and that was for the court. As is said by the present Chief Justice, in Collins v. Publishing Co., 152 Pa. 187 : " Where words are of dubious import, the plaintiff may aver their meaning by innuendo, and the truth of the innuendo is for the jury, but the quality of an alleged libel, as it stands upon the record, either simply or as explained by averments or innuendoes, is purely a question of law for the court; and in civil cases, the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true." And it is further held, in Hayes v. Press Co., 127 Pa. 642, that " If the common understanding takes hold of the words, and at once, without difficulty or doubt, applies a libelous meaning to them, an innuendo is unnecessary." The averment in the statement here is, that defendant published, wilfully, maliciously and falsely, of and concerning the plaintiff, that he was " a first class fraud, and of the first water," meaning, that in conducting his business, plaintiff cheated and deceived his patrons for purposes of gain, and that defendant thereby brought

plaintiff into public ridicule, hatred and contempt, to his damage in sum of $5,000. This is the substance of quite an unnecessarily elaborate statement, and though somewhat vague, the pleader, in the wealth of words, has not succeeded in obscuring averments essential to sustain a verdict under the act of 1887.

The learned trial judge decided that the writing was not libelous, in view of the circumstances and surroundings of the parties at the time it was written and published; that, taking the letter as a whole, it did not tend to bring plaintiff into ridicule, contempt or hatred; nor did it charge him with being a man of low or bad character; accordingly, the court entered a compulsory nonsuit, which it refused to take off. Plaintiff now appeals, assigning for error the refusal to take off nonsuit.

This particular case is not a very grave one, and defendant, possibly, from the method of publication, was more unmannerly than malicious; nevertheless, we are of opinion that, on the settled law, the court's interpretation was erroneous. The whole letter shows a coarse attack on the business character of a tradesman; one that necessarily tended to degrade him in the opinion of the public. If it had been inserted in a widely circulated newspaper, all who read it would have suspected the honesty of plaintiff, and some would have been convinced of his dishonesty in his business dealings. True, the charge of fraud does not always impute an indictable offense, but it always does impute a violation of moral or statute law, generally both. This is the common understanding when applied to a course of conduct; and the later perversion of the term, as here, to designate a person instead of a thing does not mitigate the essential gravity of the charge. If the words had been spoken, they would not, of themselves, necessarily, have imported an indictable offense, or one of infamous character, hence would not have been actionable. But, as is conceded, being written and technically published, we hold that they necessarily tended to degrade the business character of a business man in the estimation of the public and of his neighbors. This being so, the uniform course of decisions for centuries has been that such a charge is per se libelous. The last one, out of many, by this Court, in the same line, is Wood v. Boyle, 177 Pa. 620.

We are not disposed to relax a well settled rule of law,

adopted to repress malicious publications affecting injuriously the reputation of private persons, even though the damage in the particular case, by reason of the restricted publication, is but trivial. A departure from a well established and sound precedent would in all probability lead to very undesirable results. While special damage in this case was neither averred nor proved, nevertheless, plaintiff was entitled to go to the jury on the question of general damages, for the wrong done him in reputation, which last our "bill of rights" puts in the same class with life, liberty and property.

The judgment is reversed, and a v. f. d. n. is awarded.