341 A.2d 441

**John A. MOYER, Appellant,**

**v.**

**C. E. PHILLIPS, M.D.**

Supreme Court of Pennsylvania.

Submitted Nov. 21, 1974.

Decided July 7, 1975.

Andrew K. Parker, Sunbury, for appellant.

Leonard R. Apfelbaum, Sunbury, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellant alleges a cause of action in libel. After suit was filed but before trial, the defendant, Dr. Phillips, died. The trial court entered an order dismissing any further proceedings on the basis that the cause of action died with the defendant. The Superior Court affirmed per curiam. We granted allocatur in order to consider the constitutional issues raised.[1]

The complaint alleges that Mr. Moyer, a tractor-trailer driver for over thirty-five years, went to Dr. Phillips for a physical examination as required by ICC regulations. As a consequence of the examination, Dr. Phillips wrote to Mr. Moyer's employer, Hall's Motor Transit Company, that he considered Mr. Moyer a chronic alcoholic; and that although Mr. Moyer could return to work, he ought not be allowed to drive a truck. Mr. Moyer had been employed with Hall's for about seven years during which he attained a perfect driving record. He alleges that as a result of Dr. Phillips' continuing libel, he has suffered and continues to suffer damage in the nature of deprivation of his professional status, employment, company and union benefits, retirement, health, welfare and life insurance benefits and good name.[2]

The trial court dismissed appellant's cause of action pursuant to Section 3371 of the Probate, Estates, and Fiduciaries Act of 1972, No. 164, *as amended,* 20 P.S. § 3371, which provides:

"All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the

1. The Attorney General, who was notified pursuant to Rule 235 of the Rules of Civil Procedure, 12 P.S.Appendix, did not wish to intervene.

2. Appellant was permitted in this court to proceed in forma pauperis pursuant to Supreme Court Rule 61.

death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

Appellant argues that the exception of libel from this section today is an arbitrary denial of equal protection and a denial of his access to the courts for injury suffered.[3] We agree.

Sir Frederick Pollock in his work on Torts (12th Edition) pp. 60–62, discussed the effect of the death of a party on common law liability, calling it one of the "least rational parts" of our law. The rule's origin is obscure and post-classical. At one time the rule may have been justified by the vindicative and quasi-criminal character of suits for civil injuries since a process which is felt to be a substitute for private war may seem incapable of being continued on behalf of or against a dead man's estate, an impersonal abstraction. But "once the notion of vengeance has been put aside and that of compensation substituted, the rule *actio personalis moritur cum persona* seems to be without plausible ground." *Id.* at 62. Prosser similarly states:

"The best conjecture on the subject is that it was a result of the development of the tort remedy as an adjunct and incident to criminal punishment in the old appeal of felony and the act of trespass which succeeded it. Since the defendant could not be punished when he was dead, it was natural to regard his demise as terminating the criminal action, and tort liability with it. If it was the plaintiff who died, the early cases usually were those of homicide, for which the Crown executed the defendant and confiscated all his proper-

---

3. In view of our disposition of this case on equal protection grounds, we do not address the issue of due process. However, the two state courts which have previously addressed the constitutionality of exceptions to survival have both upheld survivability on state due process grounds. See *Wilfong v. Omaha and Council Bluffs St. Ry. Co.*, 129 Neb. 600, 262 N.W. 537 (1935); *Waller v. First Savings and Trust Co.*, 103 Fla. 1025, 138 So. 780 (1931), *reh'g den.,* 1932.

ty, so that nothing was left for tort compensation; and if not homicide, it was still to be expected that lesser crimes should be redressed by the Crown rather than successors of the deceased."

Prosser, Law of Torts (4th Edition, 1971), at 898.

In the early nineteenth century survival statutes were enacted, along with wrongful death acts, to modify what was considered the harsh and unjust rule of common law. The history of their development in Pennsylvania is one of gradual expansion by the legislature limited by some narrow interpretation by the courts. *See Miller v. Wilson,* 24 Pa. 114 (1854); *Maher v. Philadelphia Traction Co.,* 181 Pa. 391, 37 A. 571 (1897); *Boyd v. Snyder,* 207 Pa. 330, 56 A. 924 (1904); *Sunanday v. McKentley,* 244 Pa. 533, 90 A. 799 (1914), *and compare with Rodebaugh v. Philadelphia Traction Co.,* 190 Pa. 358, 42 A. 953 (1899). In *Sunanday* and *Boyd* the Court read the survival statute as having no application to suits involving less tangible interests in personalty such as malicious prosecution and criminal conversation. As a result, the legislature restated the survival provisions in the Act of 1917 [4] so as to clearly state that all causes of action except libel and slander survived the death of either party. Presumably, libel and slander were excepted because at the time, they were still considered as adjunct and incident to criminal punishment.[5] The criminal libel statute has since been repealed by the Act of December 6, 1972, P.L. 1482, No. 334, § 5, 18 C.P.S.A.

■ All causes of action survive the death of either party today except those alleging injury to reputation.

4. Act of June 7, 1917, P.L. 447, § 35(a) replaced by the Act of April 18, 1949, P.L. 512, § 601.

5. Libel was criminal in origin and remained a common law crime. Slander, which tended to become fused with libel, was never a crime but could only become so when the words amounted to some other offense such as blasphemy or a breach of the peace. Prosser at 751.

*Anderson v. G. A. C. Consumer Discount Co.*, 53 Pa.D. & C.2d 464 (C.P.Lack., 1971); *Smith v. Brown*, 17 Pa.D. & C. 548 (C.P.Monroe, 1933); *cf. Menefee v. Columbia Broadcasting System, Inc.*, 458 Pa. 46, 329 A.2d 216 (1974).[6] However, protection of one's reputation is a fundamental right classified with life, liberty and property. Article I, Declaration of Rights, Pennsylvania Constitution, Sections 1, 11. It is a right to be protected regardless of allegation of special or economic damage. *Meas v. Johnson*, 185 Pa. 12, 39 A. 562 (1898). *See also* Note, *Some Aspects of Civil Libel in Pennsylvania*, 7 Temple L.Q. 483 (1933).

Although survival statutes have existed for some time, we have not been asked heretofore to examine the constitutionality of any of the various statutes. Appellant urges that the exception of libel and slander is a denial of equal protection of the law under the state and federal constitutions. The standard to be applied in this case is set forth in *Cavill Estate*, 459 Pa. 411, 416, 329 A.2d 503, 505 (1974). *See also Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 64 L.Ed. 989 (1920).

█ The Equal Protection Clause of both constitutions does not deny the State the power to treat different classes of persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the

6. In *Menefee*, recently decided, we were not requested nor required to address any contitutional challenge to the exception within the statute.

object of the legislation so that all persons similarly circumstanced shall be treated alike.

The survival statute divides injured parties into two classes. The first class is composed of all parties who suffer legal injuries other than those to reputation. The second class is composed of those persons who suffer legal injury to reputation. The survival statute assures that all members of the first class will not have an accrued cause of action extinguished by the death of a party, while for the second class, extinguishment in similar circumstances is mandated.

The purpose of the survival statute is remedial and the statute is broadly drawn. *Centovani v. Penna. R. R.*, 244 Pa. 255, 263, 90 A. 558, 561 (1914). *Cf. Johnson v. People's First Nat. Bk. and Tr. Co.*, 394 Pa. 116, 124, 145 A.2d 716, 719–720 (1958). The broadness of the statute comprehends the modern theory of torts which is generally compensatory in nature. *See Pollock, supra*; 1 Sedgwick, *Damages* (9th Edition, 1912), §§ 29, 30. Another purpose of the statute is compensation of the victim's creditors. *Burns v. Goldberg*, 210 F.2d 646, 650 (3d Cir. 1954).

The Second Restatement (Tentative Draft No. 21, 1975) states that the tort law of libel and slander serves three separate functions: compensation of the plaintiff for the injury to reputation, for pecuniary loss and for emotional distress; vindication and restoration of his reputation; and punishment of defendant in order to dissuade him and others from publishing defamatory statements. We have stated that vindication and restoration of the victim's reputation is the most important function of the cause of action. *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 183, 231 A.2d 753, 755 (1967).

Today a defamation action as any other tort action is punitive only in the sense that it serves the social objective of regulating the conduct of defendant while alive

and the conduct of others. Its purpose above all is compensation for and restoration of the victim's good name. It can no longer be said that the tort of libel or slander is adjunct to the crime of libel, the legislature having repealed the criminal libel law subsequent to the re-enactment of the 1972 Probate Code. Furthermore, it has been determined that exemplary damages, which are clearly punitive, are consistent with the policies of the statute and do survive. *Hennigan v. Atlantic Refining Co.*, D.C., 282 F.Supp. 667, 683, *aff'd*, 400 F.2d 857 (3d Cir. 1967), *cert. den.*, 395 U.S. 904, 89 S.Ct. 1739, 23 L. Ed.2d 216 (1969).

The preclusion of the victim's estate or, as in the instant case, the victim himself from ever vindicating and restoring his good name does not further the statute's remedial purpose nor does it serve the essential compensatory purpose of the statute where the plaintiff suffered and continues to suffer substantial and real damages.[7] As for allowing a tortfeasor's estate to escape liability for tortious conduct, it not only deprives the plaintiff of compensation but also his creditors who must bear the burden of the deceased tortfeasor's acts. For example, the plaintiff here has been placed on state welfare by his loss of employment and has been placed in arrears with his creditors.

7. In *Lattimore v. Simmons*, 13 Serg. & R. 183 (1825), it was said that damages in a breach of contract of marriage involved injury to feelings and thus were "vindictive and uncertain." The Court held that at least in the absence of special damages, they ought not survive, implying that injury to intangible interests in personalty were in a sense a windfall. The legislature in 1917 made it explicit that injuries to intangible interests were just as survivable as purely physical injuries; the provisions were restated to assure such actions as criminal conversation and malicious prosecution survive. This Court has held that an action for consortium survives. *Smith v. Lehigh Valley R. Co.*, 232 Pa. 456, 81 A. 554 (1911). Alienation of affections survives, *Smith v. Brown*, 17 Pa.D. & C. 548 (1832), as does an action for pain and suffering and mental anguish. *Incollingo v. Ewing*, 444 Pa. 263, 296, 282 A.2d 206, 224 (1971).

In a word, as the court of a sister state recently has said, any distinction, for purposes of survival, which differentiates libel and slander from other actions is arbitrary.[8] No function of the survival statute or of the law of defamation is served by the statute's exception.[9] Diligent search reveals no other policy or purpose in any way furthered by the exception. While the classification may have borne at least some relation to a legislative

**8.** In construing its state survival statute, the New Jersey Court said:

> "The term 'trespass' in the statute is equated with 'tort.' It should not be modified by implication to exclude torts in which damages for emotional distress, not physical injury, are sought. Any such distinction is arbitrary. Damages for mental suffering and nervous anguish without physical injury were recoverable at common law in several causes of action arising out of trespass on the case, e. g., libel, slander, malicious prosecution and alienation of affections. Nor is there any logical basis for Justice Parker's dictum in *Alpaugh* [*Alpaugh v. Conkling*, 88 N.J.L. 64, 95 A. 618] that defamation actions alleging special damages, that is, property or money losses, are within the survival statute, although defamation actions alleging general damages are not."

*Weller v. Home News Pub. Co.*, 112 N.J.Super. 502, 518, 271 A.2d 738, 740 (1970).

**9.** Prosser, in presenting two additional arguments advanced against the desirability of broad survival statutes generally, quickly disposes of them:

> "There has been some dispute as to the desirability of broad survival statutes. Opposition to them is based upon the argument that justice does not require a windfall to the plaintiff's heirs by way of compensation for an injury to them when they have suffered none of their own, together with the contention that since one party is dead and the other necessarily not disinterested, the truth will be difficult to ascertain in court. The answer to the latter objection is that no serious difficulties have arisen as to contract actions and those torts which now survive. As to the first, the modern trend is definitely toward the view that tort causes of action and liabilities are as fairly part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event such as death should extinguish a valid action."

*Id.* at 901.

It can be noted that not only do libel and slander present no particular problems in ascertaining the truth but also the fact that a third party must always testify in order to establish publication. The "windfall" argument has no application at all where the plaintiff, as in the instant case, is alive. See note 7, *supra*.

purpose in earlier times, any such rationale no longer exists to validate the rule. *Cf. Niederman v. Brodsky*, 436 Pa. 401, 413, 261 A.2d 84, 89–90 (1970). As it exists today, the exception is arbitrary and bears no relationship to the objective of the statute. Accordingly, it cannot stand.[10]

Order vacated and case remanded for further proceedings consistent with this opinion.

MANDERINO, J., filed a concurring opinion.

ROBERTS, J., filed a concurring opinion in which NIX, J., joined.

POMEROY, J., did not participate in the consideration or decision of this case.

MANDERINO, Justice (concurring).

I concur in the opinion and decision of the Court.

I would like to add, however, that the Court should explicitly overrule *Menefee v. Columbia Broadcasting System, Inc.*, 458 Pa. 46, 329 A.2d 216 (1974) (see concurring opinion by Mr. Justice Manderino). In *Menefee* the plaintiff died. In this case, the defendant died. As the majority indicates, whether the plaintiff or the defendant dies following the act of libel or slander makes no difference, the cause of action continues.

ROBERTS, Justice (concurring).

I agree that section 3371 of the Probate Estates, and Fiduciaries Code [1] is unconstitutional insofar as it pro-

---

**10.** The libel and slander exception to the statute is severable. Act of November 25, 1970, P.L. 707, No. 230, added 1972 December 6, No. 290, § 3.

**1.** 20 Pa.C.S. § 3371 (1975). This section provides:
"All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

vides that causes of action for slander or libel do not survive the death of the defendant.[2] However, I find it necessary to address more fully than does the majority certain considerations which might be thought to support the validity of the statute.

The question presented in this case is whether section 3371 denies equal protection of the laws to plaintiffs in defamation actions by abating their causes of action upon the death of the defendant while allowing all other causes of action to survive the death of the defendant. The standard which must be applied to determine this question is well known:

> " '[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. *Barbier v. Connolly*, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911); *Railway Express Agency v. New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).' "

2. This case does not present any question regarding the constitutionality of that portion of section 3371 which provides that an action for slander or libel does not survive the death of the plaintiff. That question would depend upon substantially different considerations and I express no views as to its answer. To the extent that the majority opinion may do so, it is, of course, mere dictum.

*Eisenstadt v. Baird,* 405 U.S. 438, 446–447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972), quoting *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971); *Baltimore & O. R. R. v. Commonwealth Department of Labor and Industry,* 461 Pa. 68, 82–83, 334 A.2d 636, 643 (1975); *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 9, 331 A.2d 198, 201–02 (1975).

At common law, the defendant in a defamation action might be faced with a substantial burden of proof.

> "In an action for defamation, the plaintiff's prima facie case is made out when he has established a publication to a third person for which the defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character. It is then open to the defendant to set up various defenses, which to some extent have moderated the rigors of the law of libel and slander. Two of these—privilege and truth—are complete defenses, avoiding all liability when they are established."

W. Prosser, Law of Torts § 114, at 776 (1971) (footnote omitted); see id. § 116, at 798. To establish a qualified privilege, the defendant would be required to show his own good faith or lack of "malice." Id. § 115, at 794–95.

Under this scheme, the focus of litigation in a defamation suit was normally on the issues where the burden of proof rested with the defendant: truth and privilege. Especially as to the latter, where proof of the defendant's state of mind would frequently be crucial, the testimony of the defendant would be peculiarly necessary. This unique combination of a heavy burden of proof on the defendant with a peculiar need for the testimony of the defendant would render it much more difficult for a decedent's estate to defend a defamation action than to defend most other actions. Consequently, the General Assembly, when balancing the equities of allowing or not allowing survival, could reasonably determine that the unusually heavy burden of defending a defamation action

against a deceased defendant justified singling out that cause of action to abate with the death of the defendant. Since the classification thus bore a "fair and substantial relationship" to a proper legislative objective, I conclude that it did not deny equal protection to plaintiffs in defamation actions so long as the special circumstances justifying the classification continued.

However, a substantial change in the law of defamation was wrought by the decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).[3] That case held that, as a matter of constitutional law, liability for defamation may not be imposed without some showing of fault, amounting at least to negligence, on the part of the defendant. Id. at 345, 94 S.Ct. at 3010; see Restatement (Second) of Torts §§ 580A, 580B (Tent. Draft No. 21, 1975). This change drastically shifts the burden of proof in defamation actions and thereby reduces the unusually heavy burden heretofore placed on defendants in such actions. In proving the necessary element of fault to make out his cause of action, the plaintiff will necessarily have to prove facts that would ordinarily negate the existence of a conditional privilege. Id. Topic 3, Special note, at 46–47.[4] Similarly, as a practical matter,

---

**3.** That decision was rendered after the decisions of both the court of common pleas and the Superior Court in this case. While those decisions appear to me to have been correct when rendered, an appellate court must normally apply the law in effect at the time that it renders its decision. *E. g., Bradley v. School Board,* 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority,* 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969); *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801) (Marshall, C. J.).

**4.** The pertinent portion of the note reads as follows:
"It is apparent that there is an innate conflict between the constitutional fault (negligence or worse as to truth or falsity) required by § 580B, and the lack of reasonable grounds for belief in truth (the equivalent of negligence as to truth or falsity) which was a basis of abuse of privilege under § 601 as the First Restatement. If the plaintiff proves the required constitutional negligence (or greater fault) in order to have a cause of action at all, he has by that very action proved that any possi-

the plaintiff will find it necessary to prove the falsity of the statement in order to establish the necessary element of fault; to this extent, the defendant is relieved of the burden of proving truth as a defense. Id. § 582, comment b., & § 580B, comment i.

In my judgment, this radical reallocation of the burden of proof in defamation actions has sufficiently removed the special burdens of defending such an action brought against a deceased defendant as to negate the prior justification for the challenged provision of section 3371. Consequently, I conclude that there is no longer any rational basis for singling out defamation as the only cause of action which abates on the death of the defendant. Therefore, to the extent that section 3371 does this, it is a special law prohibited by article III, section 32 of the Pennsylvania Constitution[5] and denies to plaintiffs in defamation actions the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

NIX, J., joins in this concurring opinion.

> ble conditional privilege was abused. The result is that all of the conditional privileges (§§ 593–598A) completely lose their significance, and the sections on abuse of conditional privilege (§§ 599–605A) are also no longer relevant."

5. The requirements of article III, section 32 and the Equal Protection Clause are substantially the same. *Baltimore & O. R. R. v. Commonwealth Dept. of Labor and Industry,* 461 Pa. 68, 334 A. 2d 636, 643 (1975); *Bargain City U.S.A. v. Dilworth,* 407 Pa. 129, 131–33, 179 A.2d 439, 441–42 (1962).