**Carr v. News Printing Company, Inc.**

*H. Kenneth Tull*, of *Moore, James, Wright & Gibbons*, for plaintiff.

*T. Dean Lower*, for defendants.

*Gerry J. Elman*, Deputy Attorney General, for additional defendant.

SMORTO, P. J., (Forty-Seventh Judicial District, Specially Presiding), December 28, 1973.—In October 1972, a libel suit was filed by Bernard F. Carr, the former administrator of the Altoona Hospital, against News Printing Company, Inc., also known as "The Blair Press" and Harold A. Barnhart. The complaint consists of 74 pages. The first four pages contain the averments of alleged libel and the affidavit thereto. The balance consists of newspaper text, photos, and the reproduction of documents upon which the complaint is based and in which the allegedly libelous matter appears. The said newspaper text was published in the said "The Blair Press" in December 1971, and January 1972.

On February 10, 1973, the said original defendants filed a complaint against Dr. Herbert S. Denenberg, individually and as Pennsylvania State Insurance Commissioner, as an additional defendant. The original defendants allege that information contained in the newspaper text in question was furnished to them by Dr. Denenberg. They contend that if any liability arose from the publishing of such information in "The Blair Press," such liability should solely be that of the additional defendant or that he is jointly and severally liable with them.

The original and additional defendants have filed preliminary objections. These are now before

the court for consideration and disposition. We shall in this opinion hereinafter refer to plaintiff as "Carr," the original defendants as "Blair Press," and the additional defendant as the "commissioner."

In its preliminary objections, Blair Press contends that Carr's complaint is not specific enough to enable it to prepare an answer and defense and that the allegations of damage are improperly pleaded. More importantly, Blair Press argues that it was and is protected in the publication of the newspaper text in question by the first amendment of the Federal Constitution and article 1, sec. 7, of the Pennsylvania Constitution and therefore the complaint should be dismissed.

In his preliminary objections, the commissioner contends that the Court of Common Pleas of Blair County does not have jurisdiction over a civil action in which a head of an executive department of the Commonwealth is named as a defendant. In addition, the commissioner argues that he has an absolute privilege, when he acts within the scope of his authority, in any civil libel action. He also raises as a defense that the statements made by him are protected by the first amendment of the Constitution of the United States. With respect to the complaint of Blair Press against him, the commissioner contends that it does not specify what statements made by him are libelous and defamatory. Further, the commissioner points out that the complaint of Blair Press does not aver that the statements were made with actual malice, which is a necessary and essential ingredient for libel. Finally, the commissioner asserts that any claim that he is "solely" liable is barred by the one-year statute of limitations applicable to libel suits.

Before we consider the preliminary objections

raised by both the original and additional defendants, we must keep in mind the backdrop to the scenario of this case as represented by the landmark case of New York Times v. Sullivan 376 U.S. 254, 84 S. Ct. 710. That case involved a rule of law in the State of Alabama that words published of and concerning a person are libelous per se if they tend to injure him in his public office or impute misconduct to him in said office. In New York Times the Supreme Court of the United States held that the constitutional protection for speech and press require a Federal rule that prohibits a public official from recovering damages for a defamatory statement relating to his official conduct, even though it is a falsehood, unless he proves that the statement was made with "actual malice," that is, with a reckless disregard of whether it was false or not. If plaintiff, Carr, is to be successful in this action now before us, he must base his case on the cornerstone of "actual malice," that is, that the allegedly libelous statements were made with reckless disregard of whether they were true or not.

We will now consider the preliminary objections in the order above mentioned.

## SHOULD THE PLAINTIFF BE REQUIRED TO FILE A MORE SPECIFIC COMPLAINT?

As commented upon previously, of the 74 pages of the complaint, only the first four pages specify the nature of Carr's complaint. The salient allegations contained therein refer to the contents contained *"in the exhibits (but not limited to)"* the following articles:

a. "Do Fat Cats Get Fatter?"
b. "982.07 for Dinner at Blairmont"
c. "State Explains Tie-Ins with Computer Firm"
d. "The questions"

e. "Hospital Pays for Credit Cards"
f. "Carr Handles Petty Cash" and "Bernie Carr's Petty Cash"
g. "1000 and 1 Questions—And Few Answers!"
h. "1000 and 1 Questions—And Few Answers!" "INTER COUNTY INSURANCE"
i. "1000 and 1 Questions—And Few Answers!" "Questions on the Computer Operation"
j. "Blue Cross Cancellations"

In his said complaint, Carr alleges that "these supplements and articles, when read by themselves and/or in conjunction with other supplements and articles, were meant to and did convey to the readers of The Blair Press that various hospital administrators, including and especially plaintiff, had engaged in embezzlement, kickbacks, payoffs, favor-giving, tie-ins, misfeasance, malfeasance and nonfeasance-in-office in the operation of the Altoona Hospital."

Carr also alleges that in its publication of January 12, 1972, Blair Press "falsely and maliciously published and circulated the article entitled 'When a man assumes a public trust, he should consider himself as public property.' This article went on to say that:

" 'The investigation which Orr and Carr have been fighting so hard will answer once and for all the strange stories that circulate . . . It also will reveal the truth about kickbacks, payoffs, and favors. There has been wheeling and dealing, and while we suspect Carr as being the instigator of it, others may be involved . . .' "

Carr contends that the article, when read by itself *"and/or in conjunction with the aforementioned supplements and articles,"* was meant to and did convey to the readers of The Blair Press that plaintiff was engaged in and primarily responsible for the

practices referred to in the articles above enumerated. (Italics supplied.)

We believe that Carr's complaint is lacking in specificity. This defect is immediately apparent in the general allegation that "these supplements and articles, when read by themselves and/or in conjunction with other supplements and articles, were meant to and did convey . . ." that certain illegal and wrongful activities were engaged in by him. The complaint must be more painstaking in its averments. It is not the duty of defendants nor that of the court to determine and to even conjecture as to what articles "read by themselves and/or in conjunction with other supplements and articles," which constitute most of the 74-page complaint, are defamatory and libelous. The complaint must do more than quote a statement and generally refer it to voluminous exhibits. It must, in seriatim form, connect the statement to the printed matter and establish the why and wherefore of its libelous nature. It is axiomatic in the law of libel that where words used are not actionable per se, there must be an innuendo showing by reference to the facts stated, the injurious sense imputed to the charge: Sarkees v. Warner-West Corp., 349 Pa. 365, 37 A. 2d 544; Naulty v. Bulletin Co., 206 Pa. 128, 55 Atl. 862. Thus, where the words used are susceptible of more than one meaning, plaintiff must by innuendo ascribe to them their defamatory meaning, as, for example, the words "Fat Cats" as they appear in the printed matter here in question: Pfeifly v. Henry, 269 Pa. 533, 112 Atl. 768. The innuendo must be warranted, justified and supported by the publication. The innuendo cannot introduce new matter or enlarge the natural meaning of the words and thereby give the language a construction which it will not bear: Dempsky v. Double, 386 Pa. 542, 126 A. 2d

915; McAndrew v. Scranton Republican Publishing Company, 364 Pa. 504, 72 A. 2d 780; Naulty v. Bulletin Co., supra. A publication which is not in fact libelous cannot in fact be made so by an innuendo which puts an unfair construction on the publication. Sarkees v. Warner-West Corp., supra. It is only where the publication is defamatory on its face, or its meaning is plain and unambiguous, that no innuendo or explanation is required: Meas v. Johnson, 185 Pa. 12, 39 Atl. 562; Collins v. Dispatch Publishing Company, 152 Pa. 187, 25 Atl. 546.

We realize that our directive for a more specific complaint will entail considerable time and work. For this reason, we grant plaintiff a period of 40 days from the receipt of this opinion in which to file a more specific pleading. Blair Press, in turn, is given a similar period of time to file an answer to Carr's amended complaint. As to the allegation of damages, we feel the complaint is sufficient and, therefore, Blair Press's objection thereto is dismissed.

*IS THE PUBLISHING OF THE COMPLAINED OF NEWSPAPER TEXT PROTECTED BY THE FIRST AMENDMENT OF THE FEDERAL CONSTITUTION AND ARTICLE 1, SEC. 7, OF THE PENNSYLVANIA CONSTITUTION?*

Blair Press does have the right to raise issues of constitutional dimensions. However, such a constitutional defense must be raised in its eventual answer to the amended complaint by way of "New Matter." Pennsylvania Rule of Civil Procedure 1045(b) provides that:

"All affirmative defenses, including but not limited to those enumerated in Rule 1030, and the defenses of consent, *qualified privilege, fair comment, truth, and justification . . . ,* shall be pleaded under the heading 'New Matter.' " (Italics supplied.)

No one can question that Blair Press has the right under the first amendment to a qualified privilege: Corabi v. Curtis Publishing Co., 441 Pa. 432, 273 A. 2d 899 (1971); Rosenbloom v. Metromedia, 403 U.S. 29 (1971); and Matus v. Triangle Publications, Inc., 445 Pa. 384, 286 A. 2d 357 (1971). But such protection is not absolute but only qualified. The Corabi case, referring to New York Times v. Sullivan, supra, states that:

"The privilege spawned in New York Times Co. v. Sullivan and elaborated upon in subsequent cases is a *qualified privilege.*"

Therefore, Blair Press's claim of constitutional protection is an affirmative defense. It must be used in "New Matter" in its answer. Its applicability to this suit will require a factual and legal determination as to the standard of care exercised by the original defendants in publishing the allegedly defamatory materials. This constitutional question cannot be considered at this stage of the proceedings. For this reason, Blair Press's demurrer to the complaint is denied.

## DOES THE COURT OF COMMON PLEAS OF BLAIR COUNTY HAVE JURISDICTION OVER A CIVIL ACTION WHEREIN A HEAD OF AN EXECUTIVE DEPARTMENT OF THE COMMONWEALTH IS NAMED AS ADDITIONAL DEFENDANT?

The original jurisdiction of the Commonwealth Court includes "All civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity," except for proceedings not here relevant; The Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673 (No. 223), 17 PS §211.401. Furthermore, "The jurisdiction of the Commonwealth Court under this section shall be exclusive," except for certain instances also not here

relevant. Id. See Nevling & Dillon v. Shapp, 53 D. & C. 2d 34 (C. P. Centre Co. 1971).

Prior to the creation of the Commonwealth Court, the Dauphin County Court of Common Pleas had been given similar exclusive jurisdiction: Act of May 26, 1931, P. L. 191, 12 PS §105. The Supreme Court of Pennsylvania has held that a court of common pleas other than that of Dauphin County was without jurisdiction to entertain a lawsuit against the head of an executive department: Merner v. Department of Highways, 375 Pa. 609, 101 A. 2d 759 (1954). This prohibition applies equally well to an attempt to bring in the head of a department of the Commonwealth as an additional defendant: Kostusiak v. Brayman, 19 Beaver 56 (1957).

Accordingly, the complaint of Blair Press against the commissioner is dismissed, because Blair County does not have jurisdiction, and venue in Blair County is improper: Pennsylvania Rule of Civil Procedure 1503(c); Kostusiak v. Brayman, supra.

Because we have determined that the Court of Common Pleas of Blair County does not have jurisdiction in the suit against the commissioner, all of the other objections raised by the commissioner become moot so far as this court is concerned.

We must agree that high public officials acting *within their official capacity* enjoy an absolute privilege against civil libel actions (Montgomery v. Philadelphia, 392 Pa. 178, 140 A. 2d 100 (1958)), and that statements concerning issues of public or general concern or interest are protected under the first amendment: Rosenbloom v. Metromedia, 403 U.S. 29, 44. If suit is eventually filed against the commissioner in the Commonwealth Court, the question will be determined whether the statements attributed to the commissioner by Carr and Blair Press were

within the scope of his official capacity and were protected by the first amendment: C. M. Clark Insurance Agency Inc. v. Maxwell, No. 71-1927 (D.C. Cir., May 30, 1973) slip opinion at 2; Rosenbloom v. Metromedia, supra.

Even if this court had jurisdiction, the commissioner's preliminary objection to Blair Press's complaint for lack of specificity would have been sustained. It failed to show what statements, if any, were, in fact, libelous in nature.

Furthermore, Blair Press's claim that the commissioner is "solely" liable would have been barred by the statute of limitations and the preliminary objections by way of demurrer thereto would have been sustained.

Pennsylvania's statute of limitations requires suit within one year in libel cases: Act of April 25, 1850, P. L. 569, sec. 35, 12 PS §31. The one-year period runs from the date of publication: Kilian v. Stackpole Sons, Inc., 98 F. Supp. 500 (M.D., D. C., 1951), interpreting Pennsylvania law. The three publications herein alleged took place on or about December 8 and 15, 1971, and January 12, 1972. The complaint of original defendant was filed more than one year after the last of these publications, namely on February 13, 1973.

An additional defendant brought into the case after the limitations period has run can properly demur to an allegation of sole liability by virtue of the statute of limitations: Sload v. Conestoga Inn, 61 Lanc. 496 (1968); Anderson v. Media Borough, 51 Del. Co., 314 (1964).

However, the claim of "joint and several" liability would not be barred in such a suit in Commonwealth Court.

We enter the following

## ORDER

And now, December 28, 1973, the preliminary objections of the original and additional defendant are disposed of in accordance with the foregoing opinion.