## Centofanti v. Penna. R. R. Co., Appellant.

*Negligence—Actions for death—Conflict of laws—Act of April 15, 1851, Sec. 19, P. L. 669—Railroads—Grade crossings—Duty to warn of approaching train—Sudden emergency—Case for jury.*

1. Section 19 of the Act of April 15, 1851, P. L. 669, providing that when "death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased...... may maintain an action for and recover damages for the death thus occasioned," creates a new cause of action unknown to the common law and the cause of action contemplated by the statute is the tort which produces death and not the death caused by the tort.

2. A suit for damages for the death of a person is transitory and may be maintained in any jurisdiction where the writ can be served but it must be brought under the statute of the state where the cause of action arose.

3. In such case where the acts of negligence occur in Pennsylvania and the death occurs in New Jersey the action is properly brought by the widow under the Pennsylvania statute.

4. Where one in a place of peril attempts to escape the danger to which he is exposed by the negligence of another no want of care can be imputed to him if he acts in good faith and as a person of ordinary prudence would act under similar circumstances and he is not bound to pursue the safest and wisest course in attempting to avoid the danger; whether he acts as a prudent man should is for the jury.

5. In an action brought by a widow to recover damages for the death of her husband, which occurred in New Jersey, the case is for the jury and a verdict for the plaintiff will be sustained

where it appears that the plaintiff, together with several fellow-employees, was riding in a wagon which his employer was driving in the State of Pennsylvania; that as they approached defendant's four track railroad the driver stopped, looked in both directions, and listened for an approaching train, and not seeing or hearing any started across the track; that no signal of an approaching train was given; that after passing the first two tracks and while the horse was on the third a train was seen on the fourth track at a distance of six hundred feet and moving at the rate of seventy-five miles an hour; that the driver whipped the horse so that it crossed the fourth track at an increased speed and avoided a collision; and that thereafter the deceased was found lying injured on the track where it was admitted he had been struck by the train; but there was no evidence to show whether he had jumped from the wagon or had been thrown therefrom.

Argued Jan. 12, 1914. Appeal, No. 229, Jan. T., 1913, by defendant, from judgment of C. P. No. 1, Philadelphia Co., June T., 1911, No. 2051, on verdict for plaintiff in case of Luigina Centofanti, in her own right and in behalf of Mary Centofanti and Furio Centofanti, minor children of her husband, John Centofanti, deceased and said Luigina Centofanti, v. The Pennsylvania Railroad Company. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before BREGY, P. J.

The opinion of the Superme Court states the facts.

Verdict for plaintiff for $5,000 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*Sellers & Rhoads,* for appellant.

*Peter M. MacLaren,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, February 23, 1914:

This is an action of trespass brought by a widow in her own right and on behalf of her minor children to recover damages for the death of her husband which she alleges was caused by the negligence of the defendant railroad company.

On the morning of June 9, 1911, the deceased, John Centofanti, and three other persons left Bristol Borough, Pennsylvania, in a light one-horse wagon to go to the place of their employment. Centofanti and the driver sat on the seat about two feet high in the front part of the wagon. They drove west on the Bristol Pike for some distance along the defendant's railroad which was being elevated at this place. The wagon was driven by the employer of the other three men. They turned off the pike on which they were traveling to the left, and attempted to cross the four tracks of the defendant company's road which is its main line between Philadelphia and New York. They were required to pass through an opening in the embankment on which the elevated tracks were to be laid. This embankment was about fifteen feet high, and prevented the parties in the wagon seeing a train approaching from the west until they had passed through the opening. The first track was about ten or twelve feet from the embankment. The driver stopped immediately after passing through the opening in the embankment and listened and looked in both directions for an approaching train. He could see about five or six hundred feet west, in the direction of Philadelphia, and about twelve hundred feet east, in the direction of New York. Neither seeing nor hearing an approaching train, he started to cross the tracks. After he had passed over the first two tracks and the horse was on the third, he and Centofanti saw a train about six hundred feet distant approaching from the west on the fourth track. The driver immediately began to whip "the horse as hard as pos-

sible to pull everything over" so as to avoid a collision. He succeeded in clearing the fourth track before the locomotive arrived. After the train passed he discovered that Centofanti was not in the wagon and going back to the track he found him "in a terrible condition, with his face laid down on the broken stone and his foot was crushed and part of his leg too....... The back part of the foot was all off, hanging down on his foot, on the track." The testimony does not show how Centofanti got out of the wagon. He was removed to a hospital at Trenton, New Jersey, where he died from his injuries the same day. On the trial the defendant's counsel admitted "that the man was killed by the train striking him there," that is, on the fourth track. The testimony tended to show that the train which struck Centofanti was traveling at the rate of about seventy-five miles an hour and that no signal of the approach to the crossing was given, either by ringing the bell or blowing the whistle. This is the negligence averred in the statement.

The defendant contends that the case should have been withdrawn from the jury because the plaintiff failed to sufficiently prove the manner of her husband's death, and to show that the proximate cause thereof was the failure of the defendant to give a signal of the approach of the train by ringing the bell or blowing the whistle. Neither of these contentions can be sustained. The defendant offered no evidence. The plaintiff's evidence disclosed that the driver exercised care in attempting to make the crossing. He stopped, looked and listened for an approaching train at the proper place. He continued to exercise care as he drove over the crossing. He testified that although he looked and listened he did not hear a signal of the approaching train. He is corroborated by one of the other men who was in the wagon at the time. There is no evidence whatever to contradict this testimony and it was sufficient to warrant the jury in finding that the proximate cause of the

collision was the failure to give the proper signal of the approach to the crossing by the train which was running at the rate of seventy-five miles an hour.

It is difficult to understand the appellant's contention that plaintiff did not prove the manner of her husband's death. That was shown by the admission of the defendant's counsel on the trial of the cause. It was admitted that Centofanti was killed by the train striking him on the fourth track. It is argued that the testimony does not show how the deceased got out of the wagon nor that anyone saw the train strike him. The answer to this argument is that it is immaterial under the circumstances how he got out of the wagon, and that as counsel admits the deceased was struck and killed on the track it is immaterial whether anybody saw him struck or not. It appeared by the testimony that immediately before the driver began to whip the horse to avoid the collision Centofanti was sitting to the left of the driver on the seat. When he and the driver discovered the train approaching he became excited and began to "holler." He manifestly either fell out of the wagon because of the sudden acceleration of its movement or leaped out in attempting to escape from the peril in which he had been suddenly placed. The testimony fails to show any act of his which would warrant the imputation of negligence. If he was thrown from the wagon by reason of its sudden starting in the attempt to escape a collision with the rapidly approaching train, there was no negligence on his part or on the part of the driver. The driver certainly was justified in attempting to extricate himself from the peril in which he was placed by the defendant's employees in control of the train in not giving proper signals of its approach. If Centofanti jumped from the wagon in attempting to escape the imminent danger confronting him resulting from the negligence of the defendant no want of care can be imputed to him if he acted in good faith and as a person of ordinary prudence would act under similar circum-

stances. The danger was sudden and imminent and he was not bound to pursue the safest or wisest course in attempting to avoid it. Whether Centofanti fell or jumped from the wagon was, in view of the fact that the act was caused by the negligence of the defendant, immaterial, and whether he acted as a prudent man under the circumstances was for the jury.

It is further contended that binding instructions for the defendant should have been given because Centofanti having died in New Jersey the action, if maintainable, should have been brought under the New Jersey and not the Pennsylvania statute. We do not regard this argument as sound.

At common law a right of action for an injury resulting in death did not survive. This has been changed in many, if not all, of the states by statutes which give a right of action and designate the party who shall bring the suit and for whose benefit it shall be brought. They create a cause of action unknown to the common law. The right to maintain the action being statutory, it must be brought by the party to whom the right is given and for the beneficiaries named in the statute. In New Jersey the personal representative is authorized to sue for the widow and next of kin whenever death is caused "by wrongful act, neglect or default." The Act of April 15, 1851, P. L. 669, of this State authorizes an action for damages when death is occasioned "by unlawful violence or negligence," and empowers the widow, if any, but if none, the personal representatives of the deceased to bring the action. The Act of April 26, 1855, P. L. 309, declares that "the persons entitled to recover damages for any injury causing death shall be the husband, widow, children or parents of the deceased." This act designates the persons who may exercise the right conferred by section 19 of the Act of 1851: McCafferty v. Railroad Company, 193 Pa. 339.

A suit for damages for the death of a person is transitory and may be maintained in any jurisdiction where

the writ can be served, but it must be brought under the statute of the state where the cause of action arose: Knight v. West Jersey R. R. Co., 108 Pa. 250. This suit was brought under our statute and the question arises: What, in such cases, is the cause of action for which the statute of this State authorizes the suit to be brought? Is it the death of the party, or is it the tort or wrongful act which results in his death? The solution of the question must necessarily be found in the proper inter-pretation of the statute which confers the right of action. Manifestly, it is not the death of the party. A person injured by the negligence or wrongful act of another may maintain an action for the damages sus-tained. If his injuries result in death after a suit has been instituted by him, the action abates at common law. This is remedied by section 18 of our Act of 1851, which provides that the action shall not abate, but the personal representative may be substituted as plaintiff and prosecute the suit to final judgment. This section was intended to regulate a common law right of action by securing to it survivorship: Fink v. Garman, 40 Pa. 95. The cause of action which does not abate and which is the basis of the judgment obtained by the personal representative is not the death of the injured party, but the "injuries to the person by negligence or default." The following or 19th section of the act creates a new cause of action, unknown to the common law, when death shall be occasioned by "unlawful violence or neg-ligence," and no suit is brought by the injured party in his lifetime. In construing this section, we said in Birch v. Railway Company, 165 Pa. 339, 346: "While grounded on the same 'unlawful violence or negligence' for which the injured party had a common law right of action in his lifetime, the statutory right, given by the 19th section, is conditioned upon the concurring facts, that the injured party's death was occasioned by said violence or negligence, and that no suit for damages was brought by him." This is a clear recognition of the fact

that the cause of action under this section is not the death of the party but the "unlawful violence or negligence" that caused it. The Act of 1855 does not modify or change the Act of 1851 except to designate the party entitled to recover damages, in the language of the statute, for "any injury causing death." This is a statutory interpretation of the Act of 1851 and a declaration that the tort producing death is the cause for which an action may be maintained. A like interpretation of the act is found in Article 3, Section 21, of the present Constitution which provides that "no act of the general assembly shall limit the amount to be recovered for injuries resulting in death."

We think it clear that the cause of action contemplated by the statute is the tort which produces death and not the death caused by the tort. It is true that the action will not lie unless death follows the wrongful act which occasions it, but death is not the tort but simply its consequence or result. The tort or wrongful act which our statute declares actionable is "unlawful violence or negligence" causing or resulting in death. It is the tortious act or negligence of the wrongdoer, and not its consequence, that is the basis or ground of action which the statute authorizes to be brought.

Under our construction of the statute, therefore, we think the cause of action in the present case arose in this State and the action having been instituted by the parties entitled under our statute, it was properly brought here. Our conclusion is supported by Derr v. Lehigh Valley R. R. Co., 158 Pa. 365, which holds that where a person is injured in New Jersey, and subsequently dies of his injuries in Pennsylvania, no action can be brought in Pennsylvania, by the widow of the deceased suing for herself and her children, unless there was a negligent act or omission in Pennsylvania which was directly responsible for the injury received in New Jersey. None of our cases announce a different doctrine when the facts on which they were ruled are con-

sidered.  There are some expressions in the opinions
which may appear at variance with our present con-
clusion, but the facts clearly sustain it.  In Hoodmacher
v. Lehigh Valley R. R. Co., 218 Pa. 21, relied on by ap-
pellant, while it is said that the death of the deceased
having occurred in Pennsylvania the case was ruled by
the Derr case, the evidence showed that the negligent
act causing the death of the deceased was the failure to
inspect and repair the locomotive at the defendant's
roundhouse in Easton, this State.  In Labar v. N. Y. S.
& W. R. R. Co., 218 Pa. 261, also cited as supporting
appellant's contention, the deceased was killed in New
Jersey and suit was brought here by his widow under
our statute.  On the trial, the plaintiff attempted to
amend the record by substituting the administratrix as
plaintiff, so as to bring it within the New Jersey statute.
The motion to amend was refused by the trial court be-
cause in legal effect it introduced a new cause of action
after the statute of limitations had run by the substitu-
tion of different parties, and this court affirmed the
action of the court below.  This is all that was decided
in that case, although it necessarily follows from the
decision that where a person is injured and dies in New
Jersey an action will not lie under our statute to recover
damages for his death.  This is clearly right.  As both
the wrongful act and death occurred in New Jersey the
action, if maintainable, could only be brought under the
New Jersey statute where, as said in the opinion, "the
injuries were inflicted and the death occurred."

The legislation under consideration is remedial and
should be construed liberally so as to effect the intended
purpose of changing the former law and permitting a
recovery for torts resulting in death.  In many cases it
would defeat the purpose of the statute to hold that the
action lies only where the tort or negligence and death
occur in the same state.  If such was the intention of the
legislature, it would have been so declared.

The judgment is affirmed.