JAMES A. WELLS, Guardian for Frank Wells, Plaintiff v. CUMBERLAND COUNTY HOSPITAL SYSTEM, INC. and S & R HEALTH CARE, INC., d/b/a OPEN ARMS REST HOME, Defendants

No. COA01-924

(Filed 4 June 2002)

**1. Venue— local hospital authority—multi-county system— inherently local**

Venue was properly changed from Robeson to Cumberland County in a medical malpractice action against the Cumberland County Hospital System because non-profit hospital authorities created under N.C.G.S. § 131E-20 are closely connected with local government, and actions against public officers are required by N.C.G.S. § 1-77 to be tried in the county where the cause arose. Although plaintiff contends that defendant is not an inherently public agency under N.C.G.S. § 1-77(2) because it operates in multiple counties, there are no territorial limitations applicable to municipal hospitals under the Municipal Hospital Act and, under *Coats v. Hospital*, 264 N.C. 332, municipal or quasi-municipal corporations or their agents are inherently local in their nature.

**2. Medical Malpractice— venue—origin of cause of action**

A medical malpractice action arose in Cumberland County because plaintiff was treated there and alleged no acts or omissions in other locations.

Appeal by plaintiff from order entered 25 April 2001 by Judge B. Craig Ellis in Robeson County Superior Court. Heard in the Court of Appeals 24 April 2002.

*Gill & Tobias, LLP, by Douglas R. Gill; and H. Bright Lindler for plaintiff appellant.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Mark E. Anderson and Charles George, for Cumberland County Hospital System, Inc., defendant appellee.*

McCULLOUGH, Judge.

On 18 August 2000, plaintiff James A. Wells, the guardian and son of Frank Wells, filed a complaint in Robeson County on behalf of his father alleging medical negligence against Cumberland County Hospital System, Inc. (CCHS) and S & R Health Care, Inc., doing business as Open Arms Rest Home. CCHS is a private, non-profit corporation that operates hospitals and conducts activities in a number of North Carolina locations, including Cumberland, Robeson, Hoke, Bladen, Sampson, Scotland, and Harnett Counties. Among the facilities operated by CCHS was Cape Fear Valley Medical Center in Cumberland County, where plaintiff's father received medical treatment in 1995. Plaintiff's complaint alleged that CCHS and Open Arms Rest Home were negligent with Frank Wells' medical care, causing Mr. Wells to develop severe pressure ulcers and other ailments. Plaintiff's complaint also included claims for bad faith retention of medical records, a pattern of willful, wanton, and reckless abuse, and *res ipsa loquitur.*

On 9 October 2000, CCHS filed a document entitled "Motions and Answer of Defendant Cumberland County Hospital System, Inc." Included in the document was a motion for change of venue, which stated:

**FIRST DEFENSE—MOTION FOR CHANGE OF VENUE**

Defendant Cumberland County Hospital System, Inc., pursuant to N.C. Gen. Stat. § 1-77, moves this Court for a change of venue to the Superior Court of Cumberland County in that

Defendant Cumberland County Hospital System, Inc., is a non-profit corporation governed by the Board of Trustees appointed by Cumberland County and, as such, is an entity that is a public agency that must be sued in the county where the cause of action, or some part thereof, arose.

CCHS also provided the trial court with an affidavit from Mr. Harold W. Maynard, the Assistant Risk Manager for Cape Fear Valley Medical Center and a representative of CCHS. Mr. Maynard stated that CCHS is a non-stock, non-profit corporation organized under Chapter 55A of the North Carolina General Statutes; that it is governed by a board of trustees appointed by the Cumberland County Board of Commissioners; that it was established to operate and maintain its hospital facilities as an instrumentality of Cumberland County and to assist in planning future hospital needs as authorized by former Chapter 131 of the North Carolina General Statutes; and that it was authorized to act as an agent of the State as it carried out its functions.

By order dated 25 April 2001, the trial court allowed CCHS' motion to change venue and transferred venue from Robeson County Superior Court to Cumberland County Superior Court. Plaintiff appealed. Plaintiff's sole assignment of error concerns the change of venue. Plaintiff maintains CCHS accepted and used power to operate in a manner not available for a public agency (i.e., by operating satellite facilities in nearby counties), and therefore could not request a change of venue pursuant to N.C. Gen. Stat. § 1-77 (2001). After careful consideration of this matter, we disagree with plaintiff's argument and affirm the order of the trial court.

N.C. Gen. Stat. § 1-77 provides:

Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial, in the cases provided by law:

. . . .

(2) Against a public officer or person especially appointed to execute his duties, for an act done by him by virtue of his office; or against a person who by his command or in his aid does anything touching the duties of such officer.

The purpose of section 1-77 is to avoid requiring public officers to " 'forsake their civic duties and attend the courts of a distant forum.' " *Coats v. Hospital*, 264 N.C. 332, 333, 141 S.E.2d 490, 491 (1965) (quoting McIntosh, *North Carolina Practice and Procedure* § 284 (1st ed. 1929)). Furthermore, "[a]ny consideration of G.S. 1-77(2) involves two questions: (1) Is defendant a 'public officer or person especially appointed to execute his duties'? (2) In what county did the cause of action in suit arise?" *Id.*

I.

[1] Plaintiff argues Chapter 131E of the North Carolina General Statutes (formerly Chapter 131) expressly authorizes the creation of non-profit hospital authorities closely connected to a local government. N.C. Gen. Stat. § 131E-20 (2001) states:

> (a) The territorial boundaries of a hospital authority shall include the city or county creating the authority and the area within 10 miles from the territorial boundaries of that city or county. However, a hospital authority may engage in health care activities in a county outside its territorial boundaries pursuant to:
>
> > (1) An agreement with a hospital facility if only one hospital currently exists in that county;
> >
> > (2) An agreement with any hospital if more than one hospital currently exists in that county; or
> >
> > (3) An agreement with any health care agency if no hospital currently exists in that county.
>
> In no event shall the territorial boundaries of a hospital authority include, in whole or in part, the area of any previously existing hospital authority. All priorities shall be determined on the basis of the time of issuance of the certificates of incorporation by the Secretary of State.
>
> (b) After the creation of an authority, the subsequent existence within its territorial boundaries of more than one city or county shall in no way affect the territorial boundaries of the authority.

Plaintiff maintains that, because CCHS operates in multiple counties, it enjoys greater powers and operates in a manner different from that contemplated by Chapter 131E of the North Carolina General

Statutes, so that it is not an inherently public agency under N.C. Gen. Stat. § 1-77(2). We disagree.

The record clearly indicates that CCHS was created on 13 June 1969, when Highsmith-Rainey Memorial Hospital, Inc., and Cape Fear Valley Hospital, Inc., filed Articles of Merger with the Secretary of State and merged into Cumberland County Hospital Authority, Inc. (whose name was later changed to CCHS in October 1971). Mr. Maynard's affidavit (referred to previously) shows that CCHS, as organized, is a municipal hospital. *See* N.C. Gen. Stat. §§ 131E-6(5) and 131E-9 (2001).

We note there are no territorial limitations applicable to municipal hospitals under the Municipal Hospital Act. The provision relied upon by plaintiff, N.C. Gen. Stat. § 131E-20 (2001), applies to hospital authorities organized pursuant to N.C. Gen. Stat. §§ 131E-15 to 131E-39 (2001) (the Hospital Authorities Act). This fact was recognized by CCHS when it issued its 1999 Articles of Amendment. Article VI was amended to read:

> [CCHS] shall have and exercise all powers granted or available to public or municipal hospitals in North Carolina, by statute, regulation, rule, or otherwise by law, including those powers formerly granted by former North Carolina General Statute § 131-98 as it existed on June 13, 1975.

Under *Coats*, actions against municipal or quasi-municipal corporations or their agents are " 'inherently local in their nature.' " *Coats*, 264 N.C. at 333, 141 S.E.2d at 491 (quoting McIntosh § 284). Former N.C. Gen. Stat. § 131-126.28 (1981) provided that "the planning, acquisition, establishment, development, construction, improvement, maintenance, equipment, operation, and regulation of hospital facilities and the exercise of any other powers herein granted to municipalities, to be severally or jointly exercised, are hereby declared to be public and governmental functions[.]" *Coats*, 264 N.C. at 334, 141 S.E.2d at 492. This provision is similar to N.C. Gen. Stat. § 131E-12 (2001), which states:

> [t]he exercise of the powers, privileges and authorities conferred on municipalities by [the Municipal Hospital Act] are public and government functions, exercised for a public purpose and matters of public necessity. In the case of a county, the exercise of the powers, privileges and authorities conferred by [the Municipal Hospital Act] is a county function and purpose, as well

as a public and governmental function. In the case of any municipality other than a county, the exercise of the powers, privileges, and authorities conferred by [the Municipal Hospital Act] is a municipal function and purpose, as well as a public and governmental function.

In *Coats*, plaintiffs were residents of Harnett County who sued to recover money allegedly due them for materials and labor they provided toward the construction of Sampson County Memorial Hospital. *Coats*, 264 N.C. at 332, 141 S.E.2d at 491. Sampson County Memorial Hospital was a non-stock, non-profit corporation governed by a board of trustees who were appointed by the Sampson County Board of Commissioners. Sampson County delegated to the hospital the authority to maintain and operate hospital facilities. *Id.* In the present case, CCHS was the same type of corporation, governed by a board of trustees who were appointed by the Cumberland County Board of Commissioners. We discern no organizational differences between the hospital in *Coats* and CCHS. Therefore, we conclude CCHS qualifies as a "public officer" under N.C. Gen. Stat. § 1-77(2), and venue was properly changed from Robeson County to Cumberland County.

## II.

[2] " 'A broad, general rule applied or stated in many cases is that the cause of action arises in the county where the acts or omissions constituting the basis of the action occurred.' " *Coats*, 264 N.C. at 334, 141 S.E.2d at 492 (quoting Annot., Venue Of Actions Or Proceedings Against Public Officers, 48 A.L.R. 2d 423, 432). *See also Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976). In the present case, plaintiff's cause of action arose in Cumberland County because Frank Wells was treated at Cape Fear Valley Medical Center in Cumberland County and plaintiff alleged no acts or omissions in other locations. "A party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader. He cannot subsequently take a position contradictory to his pleadings." *Davis v. Rigsby*, 261 N.C. 684, 686, 136 S.E.2d 33, 34 (1964).

We conclude CCHS is a municipal corporation, and therefore, a public officer under N.C. Gen. Stat. § 1-77(2). Venue was properly changed from Robeson County to Cumberland County, where plaintiff's cause of action occurred.

The order of the trial court transferring venue to Cumberland County is hereby

Affirmed.

Judges WYNN and BIGGS concur.