**Riggio v. Katz**

*Roberta D. Pichini,* for plaintiff-appellant.
*Timothy I. McCann,* for defendants-appellees.

ABRAMSON, *J.,* October 15, 2003—Plaintiff has appealed this court's order which granted defendants'

petition to transfer venue based on the newly amended Pennsylvania Rule of Civil Procedure 1006(a.1) and which transferred the case to Montgomery County. The newly amended Pa.R.C.P. 1006(a.1) states that "a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa.R.C.P. 1006(a.1).

In her complaint, plaintiff alleges that the defendants' failure to properly interpret a positive urine culture and laboratory test results that revealed the presence of staphylococcus aureus caused her alleged injuries. This court found that venue was improper in Philadelphia County because all the alleged acts of medical malpractice occurred in Montgomery County, and that plaintiff's injury occurred simultaneously with the alleged acts of malpractice. The court found that the only connection to Philadelphia County was that it was the county in which plaintiff's injury manifested itself; it was not the county in which the injury occurred.

Thus, this court found that plaintiff's cause of action arose in the county in which the alleged negligence occurred and transferred venue to Montgomery County. Even assuming, arguendo, that the injury was not simultaneous with the alleged acts of malpractice, but occurred in Philadelphia, this court held that the plaintiff's cause of action "arose" where the defendants' alleged negligent acts occurred, not where the plaintiff's injury occurred. Moreover, this court found that the purpose of the new venue rule for medical malpractice claims promulgated by the Pennsylvania Supreme Court would be

frustrated if health care providers could be hauled into forums with which they have no contacts. This appeal presents two issues: (1) whether this court erred in finding that plaintiff's cause of action arose in Montgomery County, the county in which the alleged malpractice occurred, and consequently granting the defendants' petition to transfer to Montgomery County under venue Rule 1006(a.1); and (2) whether this court erred in ordering plaintiff to pay all costs related to the transfer of the record when venue was not disputed through preliminary objections.

## STATEMENT OF FACTS

On March 13, 2001, plaintiff, at the time a resident of Philadelphia County, was admitted to the emergency room at Elkins Park Hospital in Montgomery County. Plaintiff complained of nausea, vomiting and diarrhea that had persisted for the previous three days, as well as shortness of breath and epigastric pain. Elkins Park Hospital admitted plaintiff that day. Defendants Dr. Allan S. Katz, Dr. Maria Antoniou and Dr. Daniel J. Sher evaluated and treated plaintiff during her stay at Elkins Park Hospital.

On plaintiff's admission note, Dr. Katz, the attending physician at the time, evaluated plaintiff's condition to be "gastroenteritis, possibly viral in etiology, or bacterial." Dr. Katz noted on the admission note that a urinalysis study indicated the presence of "3+ bacteria." A subsequent laboratory report for the urinalysis confirmed the presence of the bacteria. A urine culture performed on March 13, 2001 revealed staphylococcus aureus.

In her complaint, plaintiff alleges that the defendant physicians and Tenet Health System never advised her of the abnormal urinalysis results or the urine culture results that revealed the presence of staphylococcus aureus. Additionally, she alleges that defendants failed to administer or prescribe antibiotics, to order an additional urinalysis or urine culture, and to request or obtain an infectious disease consultation.

Plaintiff was discharged from Elkins Park Hospital with a principal diagnosis listed as "dehydration due to gastroenteritis." The discharge summary dated March 16, 2001 that was signed by Dr. Antoniou stated that the probable cause of plaintiff's dehydration was "viral gastritis." Plaintiff's complaint alleges that the defendants' discharge summary incorrectly stated that "cultures were sent off which were negative" and that the complete blood count was normal on the day of discharge. In addition, plaintiff alleges that a March 16, 2001 letter from Dr. Antoniou to plaintiff's primary care physician incorrectly stated that "cultures were sent and were negative," despite the urine culture that revealed staphylococcus aureus.

Two days later, on March 18, 2001, plaintiff was transported to Nazareth Hospital emergency room in Philadelphia County. She was weak, lethargic and non-verbal. She had rales throughout her lungs. During this stay at Nazareth Hospital, plaintiff required mechanical ventilation and intubation. She was diagnosed with staphylococcus aureus pneumonia, septicemia, myocardial infarction, renal failure, respiratory failure, pulmonary collapse and depression. Subsequently, plaintiff spent two

weeks in a nursing facility where she required a PEG tube for eating.

Since the incident, plaintiff claims to have sustained severe and permanent injuries to her bones, skin, muscles, nerves, tendons, tissues and blood vessels. In addition, she alleges septic shock, hypotension, dehydration, acute ischemic renal failure, respiratory failure, pneumonia, myocardial infarction, pulmonary collapse and acute change in mental status, all as the result of the treatment she received or did not receive from Elkins Park Hospital.

## STANDARD OF REVIEW

A trial court's ruling on venue will not be disturbed if the decision is reasonable in light of the facts. *Mathues v. Tim-Bar Corp.,* 438 Pa. Super. 231, 652 A.2d 349 (1994). Furthermore, a decision to transfer venue will not be reversed unless the trial court abused its discretion. *Id.,* 438 Pa. Super. at 234, 652 A.2d at 351.

## THE INJURY OCCURRED SIMULTANEOUSLY WITH THE ALLEGED MALPRACTICE

According to the allegations in plaintiff's complaint, the defendant physicians and health center were negligent in failing to provide her with the authentic results of her urinalysis that revealed a bacterial infection and in failing to prescribe the medication necessary to treat her then existing condition. Plaintiff alleges that because the defendants failed to prescribe medication, her infection went untreated, eventually leading to her emergency room admittance in Philadelphia County two days later.

The injury was an infection that went untreated. To say that the injury occurred in *a* place or in Philadelphia is a fiction where the matter at hand is an infection, and therefore, a process. The process of infection existed and proceeded at the time the infection allegedly went untreated. Therefore, this court finds that the plaintiff's injury began to accrue at the time the defendants allegedly failed to prescribe the proper treatment. See discussion of *Green v. North Arundel Hospital Association Inc.*, 266 Md. 597, 785 A.2d 361 (2001); *Forrest County General Hospital v. Conway*, 700 So.2d 324 (Miss. 1997). As a result of the alleged malpractice, plaintiff's infection began to worsen from the time of the misdiagnosis, ultimately leading to her emergency visit to the hospital two days later in Philadelphia. Cascading diagnoses relate back to the breach of the standard of care or there is no causation. Diagnoses is nomenclature for the result of the breach and are not distinct injuries.

## THE CAUSE OF ACTION ARISES UNDER Pa.R.C.P. 1006(a.1) WHERE THE ACTS OF NEGLIGENCE OCCURRED

Even assuming, arguendo, that the injury occurred subsequent to the alleged malpractice, that is, in Philadelphia, this court found that the Pennsylvania Supreme Court intended for venue in medical malpractice cases to lie where the malpractice occurred. It was in a climate of reform that the court promulgated the amended rule that a medical liability cause of action be brought only in a county where the cause of action arose. Plaintiff's position is that a cause of action "arises" where the injury occurs.

On January 27, 2003, the Pennsylvania Supreme Court promulgated Pa.R.C.P. 1006(a.1), which states that "a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa.R.C.P. 1006(a.1).

Pennsylvania Rule of Civil Procedure 128 provides:

"In ascertaining the intention of the Supreme Court in the promulgation of a rule, the courts may be guided by the following presumptions among others:

"(a) That the Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable;

"(b) That the Supreme Court intends the entire rule or chapter of rules to be effective and certain;

"(c) That the Supreme Court does not intend to violate the Constitution of the United States or of this Commonwealth;

"(d) That if the Supreme Court has construed the language used in a rule or statute, the Supreme Court in promulgating a rule on the same subject matter which employs the same language intends the same construction to be placed upon such language;

"(e) That the Supreme Court intends to favor the public interest as against any private interest;

"(f) That no rule shall be construed to confer a right to trial by jury where such right does not otherwise exist."

Although plaintiff does not argue that Pa.R.C.P. 128(d) applies to the instant case, one could make such an argument citing the case that plaintiff cited.

In support of her position, plaintiff cited *Openbrier v. General Mills Inc.,* 340 Pa. 167, 16 A.2d 379 (1940), in which the Supreme Court affirmed a decision permitting a defendant to be sued in Washington County. Plaintiff purchased a package of flour from a retailer in Washington County, Pennsylvania. The defendant had manufactured the flour in New York and had sold the flour in New York to a wholesaler. The plaintiff alleged that the flour contained glass that injured her when she ate bread made from the flour in Washington County, Pennsylvania. *Id.,* 340 Pa. at 168. A statute permitted a county to issue process against a corporation "in the county in which the right of action arose." *Id.,* 340 Pa. at 169. In deciding that the right of action arose in Washington County the court stated:

"Where did the right of action arise in the present case? Undoubtedly in Washington, Pennsylvania, not in Buffalo, New York, because 'To constitute a tort there must be an injury; mere negligence establishes no right of action. The place of wrong is, and the tort must be deemed to arise, where the injury is inflicted, not where the negligent acts leading to it were committed': *Mike v. Lian,* 322 Pa. 353, 356, 185 A. 775, 777. If the glass was in the package of flour as the result of defendant's negligence, no 'right of action' (which is synonymous with 'cause of action': *Alpha Claude Neon Corp. v. Pennsylvania Distilling Co. Inc.,* 325 Pa. 140, 142, 188 A. 825, 826) accrued to Mrs. Openbrier until she ate the bread and thereby suffered injury: Restatement, Conflict of Laws, section 377." *Id.*

The argument that Pa.R.C.P. 128(d) applies based on *Openbrier* is subject to the counterargument that the sub-

ject matter and the language of the statute in *Openbrier* is different from the subject matter and language in Pa.R.C.P. 1006(a.1). The statute in *Openbrier* was a statute specifying the county that could issue process; the statute did not by its express terms specify the county for venue. Moreover, the statute used the words, "right of action," and the rule in the instant case uses the words, "cause of action." These differences could lead to the conclusion that Pa.R.C.P. 128(d) does not apply to the instant case. In any event, whether Pa.R.C.P. 128(d) applies in the instant case, for the reasons set forth below, this court holds that it does not control the decision.

This court also holds that statements by a member of the House of Representatives also do not control the decision in the instant case.

As stated in more detail below, the Supreme Court's adoption of Pa.R.C.P. 1006(a.1) was preceded by a few months by a new statute, which, like Pa.R.C.P. 1006(a.1), also provided for medical professional liability claims against a health care provider to be brought only in the county in which the "cause of action arose." 42 Pa.C.S. §5101.1(b) (West 2003).[1]

When the venue provision was being considered for passage in the House of Representatives, Representative Veon, who opposed passing the venue provision in the

---

1. In *North-Central Pennsylvania Trial Lawyers Association v. Weaver,* 827 A.2d 550, 559 (Pa. Commw. 2003), the Commonwealth Court ruled section 5101.1 of the Judicial Code unconstitutional on the ground that Article V of the Pennsylvania Constitution grants the Pennsylvania Supreme Court exclusive authority to promulgate venue rules.

statute, stated that the effect of the venue provision would be that if an Elk County doctor sent an Elk County patient to a Philadelphia hospital for care, the only venue for a malpractice action would be Philadelphia. Legislative Journal, House of Representatives, October 7, 2002, page 1814. However, our Supreme Court has stated that, "[t]his court has consistently held that views expressed by members of the House and Senate in consideration of legislation may not be relied upon in ascertaining the legislative intent of the enactment as finally passed." *Martin v. Soblotney,* 502 Pa. 418, 424 n.5, 466 A.2d 1022, 1025 n.5 (1983).

The following analysis supports this court's decision that under Pa.R.C.P. 1006(a.1) a cause of action arises in the county in which the acts or omissions of negligence occur.

Pennsylvania Rule of Civil Procedure 128(a) provides that "[i]n ascertaining the intention of the Supreme Court in the promulgation of a rule, the courts may be guided by the following presumptions among others: . . . (a) [t]hat the Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable."

This court found that if the meaning of "cause of action arose" is, as plaintiff argues, where the harm manifests itself, then there would be an unreasonable result. For example, if a physician is alleged to be negligent in prescribing a certain medication to a patient who the physician knows or should know is allergic to the medication, the harm will occur where the medication is taken. That place could be far from the county in which the physician prescribed the medication and far from the

county in which the patient lives. The physician could prescribe the medication in Montgomery County, the patient could live in Philadelphia and the patient could have traveled to Pittsburgh when the patient took the medication and suffered an injury.

Pennsylvania Rules of Civil Procedure state, "[t]he object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court." Pa.R.C.P. 127. To effectuate the intent of a rule, a court is to evaluate, among other things: (1) the occasion and necessity for the rule; (2) the circumstances under which the rule was promulgated; (3) the mischief to be remedied; and (4) the object to be attained. Pa.R.C.P. 127. The court examined each of these elements of construction in reaching its decision.

The Pennsylvania Supreme Court's modification of existing venue rules fits into a larger, state-wide policy aimed at reforming medical liability. Shortly before the Supreme Court amended the civil procedure rule for venue in medical malpractice cases, the General Assembly discussed changes to existing venue requirements in medical malpractice cases in hearings on the Medical Care Availability and Reduction of Error (MCARE) Act, the goal of which was to resolve the complex issue of medical malpractice in Pennsylvania. The issue of where an injured plaintiff can file suit is an integral component of Pennsylvania's policy with regard to medical malpractice and its reform. The MCARE Act states as a declaration of policy that "recent changes in the health care delivery system have necessitated a revamping of the corporate structure for various medical facilities and

hospitals" across Pennsylvania that has "unduly expanded the reach and scope of existing venue rules." 40 Pa.C.S. § 1303.514 (West 2003).

The MCARE Act established a commission "to review and analyze the issue of venue as it relates to medical professional liability actions filed in [Pennsylvania]" and to create "recommendations for such legislative action or the promulgation of rules of court on the issue of venue . . . ." 40 Pa.C.S. § 1303.514(b)(i), (ii) (West 2003). Members of the Interbranch Commission on Venue were appointed by the Attorney General, Governor of Pennsylvania, the Pennsylvania Senate and House of Representatives, and the Chief Justice of Pennsylvania. In the commission's recommendations, one of the 11 commission members stated, "[i]f the General Assembly's legislative findings are based on the existing venue rules permitting lawsuits against physicians to be filed in counties in which the physicians did not provide any medical care, this member recommends legislation restricting venue to a county where the cause of action arose whenever one or more of the defendants is a physician." This statement is a clear expression that venue should not be permitted in a county in which the physician did not provide medical care.

After the Interbranch Commission on Venue report to the Pennsylvania Senate and House of Representatives and the Chief Justice of Pennsylvania was submitted in October 2002, section 5101.1 of the Judicial Code was passed, which provided: "[n]otwithstanding any other provision to the contrary, a medical professional liability action may be brought against a health care provider

for a medical professional liability claim only in the county in which the cause of action arose." 42 Pa.C.S. §5101.1(b) (West 2003).[2] On January 27, 2003, the Pennsylvania Supreme Court promulgated the venue provision in Pa.R.C.P. 1006(a.1). In conclusion, upon examination of the context in which the rule was amended, this court found that it was the intent of the Supreme Court to restrict venue in medical malpractice cases to where the breach of the standard of care occurred.

Pennsylvania case law supports the proposition that in medical liability cases, the cause of action arises in the county where the alleged negligent act or negligent omission occurred. In Pennsylvania, a cause of action in negligence has been defined as the negligent act or acts which occasioned the injury for which relief is sought. *Reynolds v. Thomas Jefferson University Hospital,* 450 Pa. Super. 327, 338, 676 A.2d 1205, 1210 (1996), citing *Cox v. Wilkes-Barre Railway Corporation,* 334 Pa. 568, 570, 6 A.2d 538, 539 (1939). In an issue of first impression, the Superior Court faced the question of whether, when a decedent is fatally injured in one county but dies in another county, a wrongful death action arises in the county of the initial tortious conduct or in the county of the plaintiff's death. *Sunderland v. R.A. Barlow Homebuilders,* 791 A.2d 384 (Pa. Super. 2002). In *Sunderland,* the plaintiff argued that but for the death of the victim,

---

2. In *North-Central Pennsylvania Trial Lawyers Association v. Weaver,* 827 A.2d 550, 559 (Pa. Commw. 2003), the Commonwealth Court ruled section 5101.1 of the Judicial Code unconstitutional on the ground that Article V of the Pennsylvania Constitution grants the Pennsylvania Supreme Court exclusive authority to promulgate venue rules. See footnote 1.

which occurred in a Philadelphia County hospital, a wrongful death cause of action would not exist. *Id.* at 391. Therefore, plaintiff argued that under Pa.R.C.P. 1006(a), the cause of action arose, and venue was therefore appropriate, in Philadelphia County. The Superior Court upheld the trial court's determination that venue was proper in Montgomery County, the county in which the accident occurred that led to the plaintiff's death. The court reasoned that in a wrongful death suit, the plaintiff's death is not the tort but simply its consequence or result. *Id.* at 390, citing *Centofanti v. Pennsylvania R. Co.,* 244 Pa. 255, 262, 90 A. 558, 561 (1914). It is the tortious act or negligence of the wrongdoer, and not its consequence, that is the basis or ground of action. *Id.*

In a medical malpractice case, *Rubeck v. Milroth,* 53 D.&C.4th 548, 553 (2001), the defendant doctor's affidavit stated that all treatment to the plaintiff was rendered in Fulton County. The plaintiff contended that although defendant's treatment occurred in Fulton County, as a result of the defendant's alleged negligence, plaintiff had to receive additional medical treatment in Franklin County, making Franklin County an appropriate venue. *Id.* at 553. The court found Franklin County to be an inappropriate venue. The court stated that "all treatment rendered to the decedent . . . which is at the heart of this negligence action, was rendered in Fulton County . . . ." *Id.* at 554. Therefore, venue was appropriate in Fulton County, the county in which the cause of action arose. *Id.* at 554.

Other states with venue statutes similar to Pa.R.C.P. 1006(a.1) have found that a medical liability cause of

action arises in the county in which the negligent acts or omissions occurred. *Wells v. Cumberland County Hospital System,* 150 N.C.App. 584, 564 S.E.2d 74 (2002); *Forrest County General Hospital v. Conway,* 700 So.2d 324 (Miss. 1997); *Green v. North Arundel Hospital Association Inc.,* 366 Md. 597, 785 A.2d 361 (2001). For example, a Mississippi statute provides: "[c]ivil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue." *Conway,* 700 So.2d at 326. In *Conway,* the plaintiffs took their infant daughter for treatment in a Forrest County, Mississippi hospital emergency room. The plaintiffs were given an antibiotic for the child and sent home. The next day, the child's condition worsened. She was taken back to the hospital, where she was diagnosed with meningitis, requiring amputation of her arms and legs. The Supreme Court of Mississippi found that the plaintiff's damage occurred and accrued in the county in which the doctors allegedly failed to properly diagnose the disease, not where the resultant harm simply manifested itself. *Id.* at 327.

In *Wells,* the defendant hospital moved for a change of venue pursuant to a North Carolina statute that requires a plaintiff to file suit in a county where the cause of action, or some part thereof, arose. *Wells,* 150 N.C. App. at 586. The Court of Appeals of North Carolina found that the plaintiff alleged no acts or omissions by the defendants in the county in which the case was filed. *Id.* at 589. Therefore, the court affirmed the venue transfer to the county in which the alleged negligent medical

treatment occurred. *Id.* at 589. The court stated, "[t]he cause of action arises in the county where the acts or omissions constituting the basis of the action occurred." *Id.* at 589.

In *Green,* the plaintiff argued that as a result of the defendant's negligence in its failure to properly treat the plaintiff's illness, the plaintiff continued to suffer, instead of receiving treatment. *Green,* 366 Md. at 610. The Court of Appeals of Maryland found that the defendant hospital's failure to properly diagnose and treat the plaintiff's condition amounted to an injury. *Green,* 366 Md. at 612.

For the foregoing reasons, this court found that Pa.R.C.P. 1006(a.1) requires a medical liability claim to be filed in the county where the alleged medical negligence occurred. Plaintiff's interpretation of the Supreme Court's recent amendment to the rules of procedure would cause physicians to be sued where they are not alleged to have breached a duty of care owed the suing patient.

Plaintiff cited *Openbrier v. General Mills Inc.,* 340 Pa. 167, 16 A.2d 379 (1940), to support her position that a plaintiff's cause of action arises in the county where the injury has occurred, not where the negligent acts leading to the injury were committed. This court held that the rationale of *Openbrier* did not apply to the instant case, considering the circumstances surrounding the promulgation of the new venue Rule 1006(a.1), the clear intent to limit the venue in which medical professional liability claims can be brought, and the previously cited Pennsylvania and other states' decisions.

## PLAINTIFF BEARS THE BURDEN OF COST OF TRANSFER UNDER Pa.R.C.P. 1006(e)

Plaintiff contends that the trial court erred in ordering that plaintiff pay all costs related to the transfer of the case from Philadelphia to Montgomery. The court properly ordered plaintiff to pay the costs pursuant to Pa.R.C.P. 1006(e) which provides "[t]he costs and fees for transfer and removal of the record shall be paid by the plaintiff." Pa.R.C.P. 1006(e).

## CONCLUSION

For the foregoing reasons, the trial court's decision should be affirmed. The defendant's motion to transfer venue to Montgomery County was appropriately granted by the trial court under the newly amended Pa.R.C.P. 1006(a.1).