IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-106

Filed: 20 September 2016

Robeson County, No. 15 CVS 250

SONYA PAIT HEUSTESS, Administratrix of The Estate of RONNIE WAYNE
HEUSTESS, Plaintiff,

v.

BLADENBORO EMERGENCY SERVICES, INCORPORATED, d/b/a
BLADENBORO RESCUE; LYNDA A. SANDERS, individually; DAVID D. HOWELL,
in his official capacity as a Emergency Medical Technician with BLADENBORO
EMERGENCY SERVICES, INCORPORATED, and individually; JEFFERY
BRISSON, in his official capacity as a Emergency Medical Technician with
BLADENBORO EMERGENCY SERVICES, INCORPORATED and individually; and
HOLLIS FREEMAN, in his official capacity as a Emergency Medical Technician with
BLADENBORO EMERGENCY SERVICES, INCORPORATED and individually,
Defendants.

Appeal by defendants from Order entered 29 June 2015 by Judge Mary Ann

Tally in Robeson County Superior Court.  Heard in the Court of Appeals 10 August

2016.

> *MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, by J. William
> Owen and W. Edward Musselwhite, Jr., for plaintiff.*
>
> *CRANFILL SUMNER & HARTZOG LLP, by Jaye E. Bingham-Hinch, Colleen
> N. Shea, and Elizabeth C. King, for defendants.*

ELMORE, Judge.

Defendants[1] appeal from the trial court's order denying their motion to change

[1] Defendant Lynda A. Sanders did not file a notice of appeal.

venue. After careful consideration, we affirm.

## I. Background

This appeal arises out of an action filed in Robeson County by Sonya Heustess (plaintiff), administratrix of the estate of Ronnie Wayne Heustess (the decedent), against Bladen County; Bladen County Emergency Services (EMS), a department of Bladen County; Bladenboro Emergency Services, Inc. d/b/a Bladenboro Rescue (Bladenboro EMS); Lynda A. Sanders in her official capacity as a paramedic with Bladen County EMS and individually; David D. Howell in his official capacity as an emergency medical technician (EMT) with Bladenboro EMS and individually; Jeffery Brisson in his official capacity as an EMT with Bladenboro EMS and individually; and Hollis Freeman in his official capacity as an EMT with Bladenboro EMS and individually. Plaintiff later voluntarily dismissed without prejudice all claims against Bladen County, Bladen County EMS, and Sanders in her official capacity.

In plaintiff's complaint, she alleged that in February 2013, her husband, the decedent, began to experience abdominal pain and shortness of breath, and soon thereafter collapsed in their home. Plaintiff summoned the help of their daughter's boyfriend, an off-duty paramedic, who was sleeping in their daughter's house next door. Plaintiff also called the Bladen County 911 operator. Bladen County EMS and Bladenboro EMS were dispatched to the home in Bladen County and stayed on the scene for approximately twenty-six minutes before departing for Southeastern

Regional Medical Center in Robeson County. A hospital physician informed plaintiff's family that he believed the decedent had a heart attack, but he was unable to treat the decedent due to "bleeding of the brain caused by the lack of oxygen to the brain." Plaintiff alleged that Sanders, Howell, Brisson, and Freeman, as agents of their respective employers, failed to do the following: comply with the applicable protocols set forth by the North Carolina Office of EMS and Bladen County EMS; ensure that the decedent was properly intubated and that such intubation was properly monitored; make sure that the "king airway" was properly inserted and monitored while en route to the hospital; and take all necessary action to make sure the decedent received adequate oxygen.

Bladenboro EMS, Sanders, Howell, Brisson, and Freeman filed a motion to dismiss or, alternatively, to change venue to Bladen County pursuant to N.C. Gen. Stat. § 1-83(1), claiming that venue was not proper in Robeson County. After a hearing, the Robeson County Superior Court denied the motion and concluded that venue was proper in Robeson County, as alleged in plaintiff's complaint, pursuant to N.C. Gen. Stat. § 1-77. Bladenboro EMS, Howell, Brisson, and Freeman (collectively defendants) appeal.

## II. Analysis

Defendants argue that the trial court erred in denying their motion to change venue because Robeson County is not the proper venue for this action. Defendants

contend that venue is governed by N.C. Gen. Stat. § 1-82 whereas plaintiff alleges that N.C. Gen. Stat. § 1-77 controls.

At the outset, we acknowledge that an order denying a motion to change venue is interlocutory, and interlocutory orders are generally not immediately appealable. *See Hawley v. Hobgood*, 174 N.C. App. 606, 607–08, 622 S.E.2d 117, 118 (2005) (citing *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."). Our courts have established, however, that "[m]otions for change of venue because the county designated is not proper affect a substantial right and are immediately appealable." *Id.* at 608, 622 S.E.2d at 119 (citations omitted).

Defendants filed a motion for change of venue under N.C. Gen. Stat. § 1-83 (2015), which states,

> If the county designated for that purpose in the summons and complaint is not the proper one, the action may, however, be tried therein, unless the defendant, before the time of answering expires, demands in writing that the trial be conducted in the proper county, and the place of trial is thereupon changed by consent of parties, or by order of the court.
>
> The court may change the place of trial in the following cases:
>
> (1) When the county designated for that purpose is not the

proper one. . . .

"Despite the use of the word 'may,' it is well established that 'the trial court has no discretion in ordering a change of venue if demand is properly made and it appears that the action has been brought in the wrong county.' " *Stern v. Cinoman*, 221 N.C. App. 231, 232, 728 S.E.2d 373, 374 (2012) (quoting *Swift & Co. v. Dan-Cleve Corp.*, 26 N.C. App. 494, 495, 216 S.E.2d 464, 465 (1975)). "A determination of venue under N.C. Gen. Stat. § 1-83(1) is, therefore, a question of law that we review *de novo*." *Id.* (citations omitted).

Under N.C. Gen. Stat. § 1-77 (2015),

> Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial, in the cases provided by law:
>
> . . . .
>
> (2) Against a public officer or person especially appointed to execute his duties, for an act done by him by virtue of his office; or against a person who by his command or in his aid does anything touching the duties of such officer.

However, "[i]n all other cases the action must be tried in the county in which the plaintiffs or the defendants, or any of them, reside at its commencement . . . ." N.C. Gen. Stat. § 1-82 (2015).

Here, the trial court concluded as a matter of law that N.C. Gen. Stat. § 1-77(2) applies, in that there was "an agency relationship between Bladen County and

Bladenboro [EMS] for purposes of venue under N.C. Gen. Stat. § 1-77(2)." Additionally, it concluded that plaintiff's allegations were sufficient to establish that part of plaintiff's cause of action arose in Robeson County.

Our Supreme Court has stated that "[a]ny consideration of G.S. 1-77(2) involves two questions: (1) Is defendant a 'public officer or person especially appointed to execute his duties'? (2) In what county did the cause of action in suit arise?" *Coats v. Sampson Cty. Mem. Hosp., Inc.*, 264 N.C. 332, 333, 141 S.E.2d 490, 491 (1965) (holding that the defendant-hospital was an agency of Sampson County and venue was proper in Sampson County under N.C. Gen. Stat. § 1-77); *see also Wells v. Cumberland Cty. Hosp. Sys., Inc.*, 150 N.C. App. 584, 587, 564 S.E.2d 74, 76 (2002).

Defendants argue that N.C. Gen. Stat. § 1-77 does not apply because plaintiff dismissed the three "County defendants" and failed to allege or present any evidence that the remaining defendants were public officers within the meaning of section 1-77. Defendants rely on our holding in *Fraley v. Griffin*, 217 N.C. App. 624, 629, 720 S.E.2d 694, 697 (2011), to support their argument. In that case, this Court held that the defendant, an EMT, was not entitled to public official immunity and could be held personally liable for any harm caused by his negligence as an EMT. *Id.* For the following reasons, *Fraley* is not controlling here.

In *Hyde v. Anderson*, 158 N.C. App. 307, 309–10, 580 S.E.2d 424, 425 (2003), this Court observed that the test for whether a party can be considered a public officer

for purposes of venue does not take into account the test for finding immunity. In *Hyde*, the plaintiff argued that "the correct test for determining if section 1-77(2) applies should be whether a municipality is engaged in a proprietary function or a governmental function." *Id.* We stated, "Although we acknowledge this is the proper test for determining whether a governmental actor is entitled to sovereign immunity, . . . we discern no basis for applying it to determinations of venue in suits against a municipality." *Id.* at 310, 580 S.E.2d at 425.

Here, plaintiff claims that there was an agency relationship between Bladen County, a government entity, and Bladenboro EMS, a nonprofit corporation, and that Bladenboro EMS was serving the "essential government and public function" of providing emergency medical care to Bladen County citizens.

"In determining whether a corporate entity should be treated as an agency of local government, 'we . . . must look at the nature of the relationship between the [corporation] and the county[.]'" *Odom v. Clark*, 192 N.C. App. 190, 195, 668 S.E.2d 33, 36 (2008) (quoting *Publishing Co. v. Hosp. Sys., Inc.*, 55 N.C. App. 1, 11, 284 S.E.2d 542, 548 (1981)). Under N.C. Gen. Stat. § 143-507 (2015), the General Assembly established a "Statewide Emergency Medical Services System" in the Department of Health and Human Services as follows:

> Emergency Medical Services as referred to in this Article include all services rendered by emergency medical services personnel as defined in G.S. 131E-155(7) in responding to improve the health and wellness of the

community and to address the individual's need for immediate emergency medical care in order to prevent loss of life or further aggravation of physiological or psychological illness or injury.

N.C. Gen. Stat. § 131E-155(7) (2015) states that "[e]mergency medical services personnel" include an EMT, which is defined in N.C. Gen. Stat. § 131E-155(10) (2015) as "an individual who has completed an educational program in emergency medical care approved by the Department and has been credentialed as an emergency medical technician by the Department." *See also* N.C. Gen. Stat. § 131E-158 (2015) ("Credentialed personnel required."); N.C. Gen. Stat. § 131E-159 (2015) ("Credentialing Requirements.").

Moreover, "[e]ach county shall ensure that emergency medical services are provided to its citizens[,]" N.C. Gen. Stat. § 143-517 (2015), and "a county may operate or contract for ambulance services in all or a portion of the county." N.C. Gen. Stat. § 153A-250(b) (2015). The "Regulation of Emergency Medical Services" is provided for in Chapter 131E, Article 7 of our General Statutes. N.C. Gen. Stat. § 131E-156(a) (2015) provides,

> No person, firm, corporation, or association, either as owner, agent, provider, or otherwise, shall furnish, operate, conduct, maintain, advertise, or otherwise engage in or profess to be engaged in the business or service of transporting patients upon the streets or highways, waterways or airways in North Carolina unless a valid permit from the Department has been issued for each

ambulance[2] used in the business or service.

Similarly, "No firm, corporation, or association shall furnish, operate, conduct, maintain, advertise, or otherwise engage in or profess to provide emergency medical services or transport patients upon the streets or highways, waterways, or airways in North Carolina unless a valid EMS Provider License has been issued by the Department." N.C. Gen. Stat. § 131E-155.1(a) (2015).

Consistent with the statutes cited above, here, Bladenboro EMS and Bladen County entered into a contract signed by the Chairman of the Board of Directors of Bladenboro EMS and the Chairman of the Board of Commissioners of Bladen County. Pursuant to that contract, both parties agreed that Bladenboro EMS would "furnish and provide continuing EMS services to all individuals lying within the boundaries of the Bladenboro EMS [ ] response area by dispatching upon call of any individual within the response area, with adequate equipment and personnel." While defendants claim that Bladenboro EMS was in complete "control of its vehicles, programs, volunteers, assistants and employees[,]" Bladenboro EMS was subject to the regulations provided in the statutes discussed above. Furthermore, in order to satisfy its own statutory duty to "ensure that emergency medical services are provided to its citizens[,]" N.C. Gen. Stat. § 143-517, Bladen County entered into a contract with Bladenboro EMS. Based on the nature of the relationship between

---

[2] The definition of "ambulance" in N.C. Gen. Stat. § 131E-155(1a) (2015) includes any privately or publicly owned vehicle.

Bladenboro EMS and Bladen County, we conclude that Bladenboro EMS is an agency of Bladen County for purposes of venue here.

Additionally, although defendants argue that the alleged omissions giving rise to the cause of action occurred only in Bladen County, plaintiff alleged in her complaint that defendants failed to properly monitor the decedent and make sure that he had adequate oxygen while defendants transported him from plaintiff's home in Bladen County to the hospital in Robeson County. Plaintiff alleged that upon arriving at the hospital, a physician removed the king airway device and re-intubated the decedent. Plaintiff further alleged that the decedent died as a result of his brain being deprived of oxygen.

Even though plaintiff alleged other negligent acts and omissions that she claimed occurred in Bladen County, because part of the cause of action arose in Robeson County, venue is proper in Robeson County under N.C. Gen. Stat. § 1-77(2). *See Coats*, 264 N.C. at 334, 141 S.E.2d at 492 (" 'A broad, general rule applied or stated in many cases is that the cause of action arises in the county where the acts or omissions constituting the basis of the action occurred.' " (quoting Annot., Venue of actions or proceedings against public officers, 48 A.L.R. 2d 423, 432)); *see also Frink v. Batten*, 184 N.C. App. 725, 726, 730, 646 S.E.2d 809, 810, 812 (2007) (noting that section 1-77, which states that venue exists " 'where the cause, or some part thereof, arose,' acknowledges that those acts and omissions may arise in multiple counties"

and "one of the sets of defendants will be required to litigate the case outside their home county").

Defendants also claim that the trial court erred in failing to rely on the affidavit of David D. Howell, dated 21 May 2015, and in making findings of fact and conclusions of law that were in conflict with his sworn testimony. "[T]he trial court in ruling upon a motion for change of venue is entirely free to either believe or disbelieve affidavits such as those filed by the defendants without regard to whether they have been controverted by evidence introduced by the opposing party." *Godley Const. Co. v. McDaniel*, 40 N.C. App. 605, 608, 253 S.E.2d 359, 361 (1979) (citations omitted). The trial court was not required to rely on, or find facts and enter conclusions of law in accordance with, Howell's affidavit.

### III. Conclusion

The trial court did not err in denying defendants' motion to change venue.

AFFIRMED.

Judges DAVIS and DIETZ concur.